MOTOR CLUB OF AMERICA INSURANCE COMPANY, PLAIN-
TIFF-RESPONDENT, v. CHARLES R. PHILLIPS, DE-
FENDANT-APPELLANT.

Argued November 4, 1974—Decided December 18, 1974.

278

Mr. *John P. Jehl* argued the cause for appellant (*Messrs. Feingold and Jehl,* attorneys).

Mr. *Jerome S. Lieb* argued the cause for respondent (*Messrs. Lieb, Teich & Berlin,* attorneys).

The opinion of the Court was delivered by

CONFORD, P. J. A. D., Temporarily Assigned. This appeal presents to this court for the first time the extensively litigated question whether an "other insurance" exclusion in the uninsured motorist (UM) endorsement of an auto-

mobile liability policy, which purports to prohibit recovery on the UM coverage on the accident victim's own policy if he has recovered or has available recourse to the UM coverage of the vehicle he was occupying when injured (except to the extent of an excess in amount of coverage of the former over the latter), is invalid because repugnant to a statute requiring every automobile liability policy issued to include an offer of UM coverage in stated amounts per person and per accident for damages for bodily injury. The question is posed in the context of an assumption of total damages to the insured exceeding the maximum coverage of the primary policy (that covering the vehicle involved in the accident). The Law Division and the Appellate Division held the other insurance exclusion valid and operative. While the Appellate Division affirmed for the reasons stated orally by the Law Division judge, its views were amplified in its opinion in a different case involving the same issue, decided the same day by the same Part of the court. *Hartford Ins. Co. v. Allstate*, 127 *N. J. Super.* 460 (1974).

On June 24, 1971 defendant was a passenger in an automobile owned by Walter Malinowski and operated by David Malinowski which became involved in an accident with an uninsured automobile owned and operated by one Watson. Plaintiff concedes the uninsured motorist was responsible for the collision. Defendant alleges that he suffered fractures of the right tibia and fibula, causing medical expenses of $1,600 and loss of income of $5,500, and "resulting pain and suffering and permanency".

The host vehicle was covered by a policy issued by Allstate Insurance Company which contained a UM endorsement providing coverage of $10,000 for injuries to one person. Defendant collected that sum from Allstate. Plaintiff had previously issued an automobile liability insurance policy on a car owned by defendant's wife with a UM endorsement of $10,000 per person and $20,000 per accident for which defendant had paid a $5 premium. Defendant

was an insured under that policy, and made a claim against plaintiff for payment on the UM endorsement. The company denied liability on the basis of the other insurance provision in the UM endorsement the first paragraph of which read as follows:

With respect to bodily injury to an insured while occupying a highway vehicle not owned by the named insured, this insurance shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such vehicle as primary insurance and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.[1]

As the UM limits for injury to a single person were $10,000 in each policy, the other insurance exclusion would exculpate plaintiff on the claim.

The defendant thereupon filed a demand for arbitration with the American Arbitration Association seeking recovery from the plaintiff on the UM endorsement. Plaintiff instituted an action in the Chancery Division to restrain defendant from proceeding with the arbitration, and defendant moved for summary judgment. On that motion and plaintiff's cross-motion for summary judgment, the Chancery Division judge granted the plaintiff's motion and entered an order enjoining defendant from proceeding with arbitration. On appeal, as noted above, the Appellate Division affirmed. This court granted defendant's petition for certification. 65 *N. J.* 556 (1974).

Although the Chancery Division had previously, in *McFarland v. Motor Club of Amer. Ins. Co.*, 120 *N. J. Super.*

---

[1] The paragraph quoted is a standard endorsement in the insurance industry and is known as an "excess escape clause." It was followed by a paragraph, not here applicable, generally known as a *pro rata* clause, providing that, except for the condition in the prior paragraph, if the insured has "other similar insurance available" the damages are not to be deemed to exceed the limits of the higher limited policy and the company is liable only for the proportion of such damages which the limits of the policy bear to the sum of the limits of all insurance applicable.

554 (Ch. Div. 1972, per Francis, J. S. C.), held in a precisely similar situation that the other insurance clause was violative of the public policy reflected by our statute mandating an offer of UM coverage in stated limits  in every automobile liability policy issued, *N. J. S. A.* 17:28–1.1, the lower courts in the present case, and the Appellate Division more precisely in *Hartford Ins. Co. v. Allstate, supra,* held to the contrary. Their view was that the UM statute, adopted in 1968 and effective in January 1969, was designed solely to relieve the Unsatisfied Claim and Judgment Fund of a large part of its existing financial burden, and was essentially a transfer of UM relief from the Fund to the insurance industry. In that view, since relief from the Fund was limited to a single recovery of $10,000 for one person and $20,000 for one accident, and a contemporaneous amendment of the Fund act made availability of UM insurance a defense to a claim against the Fund, *N. J. S. A.* 39:6–62, there was no reason to believe the Legislature intended by the UM statute to mandate allowance of claims by an injured person aggregating more than the $10,000 limit fixed for UM coverage by the act, even if the injured motorist was covered by more than one policy containing UM protection and his damages in fact, as here, exceeded the $10,000 limitation. 127 *N. J. Super.* at 464–465. This view was thought to gain strength from the fact that, as required by the statute, the Commissioner of Insurance had approved the form of the UM endorsement, including the other insurance exclusion. *Id.,* at 465–466.

Views accordant with those expressed in *Hartford,* unsympathetic with multiple-policy recovery on UM endorsements (sometimes pejoratively labelled as "stacking"), were expressed in *Allstate Ins. Co. v. McHugh,* 124 *N. J. Super.* 105, 113 (Ch. Div. 1973), aff'd o. b. 126 *N. J. Super.* 458 (App. Div.), certif. den. 65 *N. J.* 288 (1974), and *Beek v. Ohio Casualty,* 127 *N. J. Super.* 187, 192 (Ch. Div. 1974). However, the specific issues presented in those cases do not

concern us here and we imply no view on the results there adjudicated.

In *McFarland v. Motor Club of Amer. Ins. Co., supra,* on facts parallel to those here, the court followed what it regarded as the "majority view" in cases decided elsewhere on the point, typified by *Safeco Insurance Co. of America v. Jones,* 286 *Ala.* 606, 243 *So.* 2d 736 (Sup. Ct. 1970). Judge Francis pointed out that the other insurance clause in *Safeco* was identical with that there (and here) involved and that the Alabama statute mandating an offer of UM coverage in every liability policy issued was substantially similar to ours. He was apparently impressed with the *Safeco* reasoning that the statute imposes no limit on an insured's recovery (from all sources) for his actual damages, but that it was rather the insurer which was attempting to do so, thereby subverting its own statutory obligation to independently afford UM coverage in the stated amounts; and he felt that "any compulsory motor vehicle insurance act is remedial and should be liberally construed so that the beneficial purposes intended might be accomplished." 120 *N. J. Super.* at 561–562. See the Note on *McFarland* in 4 *Seton Hall L. Rev.* 697 (1973).

The device of voluntary UM insurance in automobile liability policies was conceived by the insurance industry in the 1950's as an antidote to the incipient movement across the country to make automobile liability insurance mandatory. Donaldson, "Uninsured Motorist Coverage", 36 *Ins. Counsel J.* 397, 399 (1969); Comment: "Limitations of Liability Within Uninsured Motorist Insurance Policies", etc. 52 *Neb. L. Rev.* 158, 160 (1972). Thereafter most of the states by statute made such coverage, or the offer thereof to policyholders, mandatory, invariably fixing the required limits at, or at not less than the minimum amounts provided for by the motorist financial responsibility statute of the jurisdiction. *Ibid.*

In New Jersey the mandatory offer of UM coverage was not legislated until 1968. *L.* 1968, *c.* 385, effective January 2,

1969. *N. J. S. A.* 17:28–1.1. The limits per policy were fixed at those set forth in the Unsatisfied Claim and Judgment Fund Act (*N. J. S. A.* 39:6–69). *Ibid.* Prior to that time proffer of UM insurance was voluntary, but applied only to accidents occurring outside the State. *L.* 1961, *c.* 11. Statutory reliance for the direct relief of victims of uninsured motorists was at first placed solely on the Unsatisfied Claim and Judgment Fund, created in 1952. *L.* 1952, *c.* 174 (*N. J. S. A.* 39:6–61 *et seq.*). The Fund device was used in only a few other states. (Maryland, Michigan, New York and North Dakota). See Note, 4 *Seton Hall L. Rev., op. cit. supra,* at 699; Widiss, "A Guide to Uninsured Motorist Coverage" (1969) 8, 9. Fund liability limits were fixed at the same amounts as the financial responsibility statute, and as those of the latter rose from time to time, so did those of the Fund. *N. J. S. A.* 39:6–69, as amended by *L.* 1958, *c.* 99; *L.* 1972, *c.* 198; *N. J. S. A.* 39:6–25, 39:6–31. At the time of the accident herein the limits were $10,000 and $20,000 (per person and per accident). They presently stand at $15,000 and $30,000. *Ibid.*

Subsequent to the date of the accident in this case the automobile insurance statute was amended to make UM coverage in automobile liability policies mandatory and to fix the limits at $15,000 per person and $30,000 per accident. *L.* 1972, *c.* 204, effective January 1, 1973.

Rounding out the pertinent legislative history, the same act which made an offer of UM coverage in automobile policies mandatory on the issuing company, *L.* 1968, *c.* 385, also made recourse to the Unsatisfied Claim and Judgment Fund unavailable to any insured under an automobile policy affording UM coverage. *N. J. S. A.* 39:6–62, as amended.

There is no doubt that in making tender of UM coverage mandatory in 1968 the Legislature was motivated by a desire to give relief to the Fund, which, at that time, was approaching insolvency because of the growing gap between its income and the volume of claims upon it. See *Public Hearing,* March 4, 1968, before the Joint Senate and Assembly Committees

on Banking and Insurance, on Assembly Bill No. 111 and Senate Bill No. 481, pp. 10, 47, 51; *Obst v. State Farm Mut. Auto. Ins.,* 123 *N. J. Super.* 60, 64 (Ch. Div. 1973) aff'd o. b. 127 *N. J. Super.* 458 (App. Div. 1974). It is upon the basis of that motivation that the plaintiff insurer argues that in enacting the UM automobile legislation in 1968 the lawmakers intended that insurers were under no greater obligation by a UM endorsement than to afford a motorist injured through the fault of an uninsured motorist the same coverage for damages as that which was previously available *via* a claim against the Fund — *i. e.* a recovery of not in excess of $10,000 for one injured person, as here. In limiting UM recovery by an individual to $10,000 over-all, the other insurance clause, it is thus argued, accords with the legislative intent.

The position *contra,* however, is that while legislative history is pertinent, it is not conclusive as to intent; that the literal import of the statute is to prohibit the issuance of any *policy* which does not insure for the stated UM limits; that the statute does not suggest that any given insurer may absolve itself from its literal statutory obligation after accepting a premium therefor because another insurer had contracted with the insured for the same coverage; and that unless the insured's aggregate claims on multiple policies exceed his actual damages, allowing him indemnification on all the purchased coverages accords with our broad judicial policy for construing automobile liability statutes and insurance policies, where possible, in favor of rather than against full indemnification for injury from traffic accidents.

The statute in question, *N. J. S. A.* 17:28–1.1, so far as pertinent as of the date here applicable, read as follows:

*No* automobile liability *policy* or renewal of such policy, of insurance insuring against loss resulting from liability imposed by law for bodily injury or death, sustained by any person arising out of the ownership, maintenance or use of a motor vehicle *shall be delivered or issued for delivery* in this State with respect to any motor vehicle registered or principally garaged in this State *unless coverage is offered in connection therewith,* in limits for bodily injury or death set

forth in section 9 of chapter 174 of the laws of 1952 (C. 39:6–69)
[$10,000 and $20,000], under provisions approved by the Commissioner of Banking and Insurance, for payment of all or part of the sums which *the insured* or his legal representative shall be legally entitled to recover as damages from the operator or owner of an uninsured automobile, or hit and run automobile as defined in section 18 of said chapter 174 (C. 39:6–78), because of bodily injury, sickness or disease, including death resulting therefrom, sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured or hit and run automobile anywhere within the United States or Canada. (emphasis added).

Although the statute calls for approval by the Commissioner of the policy provisions, and the Commissioner concededly approved the blanket UM form, including the other insurance exclusion, tendered him by the insurance representatives when the act went into effect, see *Obst v. State Farm Mut. Auto Ins., supra* (123 *N. J. Super.* at 65–66), the Commissioner obviously had no power to approve a provision violative of the statutory intent. See *Walton v. State Farm Mutual Automobile Ins. Co.,* 518 *P.* 2d 1399, 1400–1401 (Sup. Ct. Hawaii 1974) ; *Simpson v. State Farm Automobile Insurance Co.,* 318 *F. Supp.* 1152, 1156 (S. D. Ind. 1970). Thus the question of statutory intent remains open, the Commissioner's judgment in the matter being evidential but not conclusive.

For general background on the adoption of *N. J. S. A.* 17:28–1.1, see Stanton, "Protection Against Uninsured Motorists in New Jersey," 3 *Seton Hall L. Rev.* 19 (1971).

The basic issue calling for determination here has been widely litigated elsewhere, forty-six states having adopted mandatory UM coverage legislation before New Jersey did, Widiss, "A Guide to Uninsured Motorists Coverage", *op. cit. supra* (Appendix B, at 306–309), and almost all in form essentially similar to the New Jersey statute. *Id.,* at 15. We do not regard the statutory differences as significant in relation to the issue at hand, insofar as judicial decisions in other states may be consulted by us for guidance. While, as noted above, most of the statutes adopt the coverage limits of the financial responsibility laws of

the respective states as the applicable limits for UM coverage, and generally make them minimums ("at least"), whereas our statute is neutral as to whether the Unsatisfied Claim and Judgment Fund limits, adopted therein, are maximum or minimum, we think this makes no difference. Even if the New Jersey act is construable to make the limits maximums, the ultimate question remains whether the statute contemplates a single UM policy coverage as a permissible measure of maximum recovery by one injured claimant as against any number of extant policies applicable to the accident and the insured; or whether it is intended that all such policies extant should be available to the claimant (or at least, in the present context, both the policy for the host vehicle and that of the named insured-claimant), so long as the aggregate of recoveries does not exceed the claimant's actual damages.

Nor do we accept the plaintiff's argument that it is significant that our statute requires that the UM endorsement undertake "payment of all or *part* of the sums" recoverable by the claimant from the uninsured motorist, in contrast with some of the statutes in other states which call for payment of "all sums" the insured is entitled to recover against the uninsured motorist (within the statutory coverage limits). See, *e. g. Bryant v. State Farm Mutual Automobile Ins. Co.*, 205 *Va.* 897, 140 *S. E.* 2d 817, 820 (Sup. Ct. 1965). The "all or part of" language of our act stems from the earlier statute authorizing voluntary issuance of UM insurance for "part or all" of the sums recoverable by the insured from the uninsured motorist. *L.* 1961, *c.* 11, section 1. The language is compatible with the envisaged fact that because the UM limits are in stated low amounts the endorsement may turn out to be inadequate to indemnify for the injured person's full adjudicated damages. The language thus exerts no weight at all on the issue of the legislative intent in respect of the present inquiry, even though the alternative statutory phrasing, "payment of all sums", is sometimes used as makeweight in opinions invalidating

the other insurance exclusion (as in *Bryant, supra*). But for a persuasive refutation of the latter concept see Comment, 52 *Neb. L. Rev., op. cit. supra* (at 167–168).

There is a sharp split among the other jurisdictions having UM statutes like ours as to the validity of the excess-escape paragraph of the standard other insurance clause of the UM endorsement. A heavy preponderance of the courts which have dealt with the question hold the provision invalid as repugnant to the statute, at least in the context of claims by insureds (as here) not seeking multiple recovery on more than one policy on cars owned by a named insured or others in his household, and provided the aggregate of all recoveries will not exceed the claimant's damages from his injuries.[2]

---

[2]Alabama — *Safeco Insurance Co. of America v. Jones,* 286 *Ala.* 606, 243 *So.* 2d 736 (Sup. Ct. 1970).

Connecticut — *Fidelity & Casualty Co. of New York v. Darrow,* 161 *Conn.* 169, 286 *A.* 2d 288 (Sup. Ct. 1971).

Florida — *Sellers v. United States Fidelity & Guaranty Co.,* 185 *So.* 2d 689 (Fla. Sup. Ct. 1966).

Georgia — *State Farm Mutual Automobile Ins. Co. v. Murphy,* 226 *Ga.* 710, 177 *S. E.* 2d 257 (Sup. Ct. 1970).

Hawaii — *Walton v. State Farm Mutual Automobile Ins. Co.,* 518 *P.* 2d 1399 (Haw. Sup. Ct. 1974).

Indiana — *Patton v. Safeco Insurance Company of America,* 148 *Ind. App.* 548, 267 *N. E.* 2d 859 (Ind. App. Ct. 1971) ; *Simpson v. State Farm Mutual Automobile Insurance Co.* 318 *F. Supp.* 1152 (S. D. Ind. 1970).

Kansas — *Clayton v. Alliance Mutual Casualty Co.,* 212 *Kan.* 640, 512 *P.* 2d 507 (Sup. Ct. 1973).

Kentucky — *Meridian Mutual Insurance Company v. Siddons,* 451 *S. W.* 2d 831 (Ky. Ct. App. 1970).

Louisiana — *Graham v. American Casualty Co. of Reading, Pa.,* 261 *La.* 85, 259 *So.* 2d 22 (Sup. Ct. 1972).

Massachusetts — *Johnson v. Travelers Indemnity Company,* 359 *Mass.* 525, 269 *N. E.* 2d 700 (Sup. Jud. Ct. 1971).

Michigan — *Blakeslee v. Farm Bureau Mutual Ins. Co. of Mich.* 388 *Mich.* 464, 201 *N. W.* 2d 786 (Sup. Ct. 1972).

Minnesota — *Van Tassel v. Horace Mann, etc., Insurance Company,* 296 *Minn.* 181, 207 *N. W.* 2d 348 (Sup. Ct. 1973).

Mississippi — *Harthcock v. State Farm Mutual Automobile Ins. Co.* 248 *So.* 2d 456 (Miss. Sup. Ct. 1971).

In only seven jurisdictions are there presently authoritative court opinions which, after considering the effect of mandatory UM statutes, hold excess-escape clauses to be valid[3]. There is considerable variance among both the ma-

Nebraska — *Bose v. American Family Mutual Insurance Co.*, 186 *Neb.* 209, 181 *N. W.* 2d 839 (Sup. Ct. 1970).

New Mexico — *Sloan v. Dairyland Insurance Company*, 86 *N. M.* 65, 519 *P.* 2d 301 (Sup. Ct. 1974).

North Carolina — *Moore v. Hartford Fire Ins. Co. Group*, 270 *N. C.* 532, 155 *S. E.* 2d 128 (Sup. Ct. 1967).

Ohio — *Curran v. State Automobile Mutual Ins. Co.*, 25 *Ohio St.* 2d 33, 266 *N. E.* 2d 566 (Sup. Ct. 1971).

Oklahoma — *Markham v. State Farm Mutual Automobile Ins. Co.*, 326 *F. Supp.* 39 (W. D. Okla. 1971), rev'd other grounds, 464 *F.* 2d 703 (10 Cir. 1972).

Pennsylvania — *Harleysville Mutual Casualty Co. v. Blumling*, 429 *Pa.* 389, 241 *A.* 2d 112 (Sup. Ct. 1968).

Rhode Island — *Pickering v. American Employers Insurance Co.*, 109 *R. I.* 143, 282 *A.* 2d 584 (Sup. Ct. 1971).

South Carolina — *Boyd v. State Farm Mut. Auto. Ins. Co.*, 260 *S. C.* 316, 195 *S. E.* 2d 706 (Sup. Ct. 1973).

South Dakota — *Westphal v. Amco Insurance Company*, 209 *N. W.* 2d 555 (S. D. Sup. Ct. 1973).

Texas — *American Liberty Insurance Company v. Ranzau*, 481 *S. W.* 2d 793 (Tex. Sup. Ct. 1972).

Virginia — *Bryant v. State Farm*, 205 *Va.* 897, 140 *S. E.* 2d 817 (Sup. Ct. 1965).

*United Services Automobile Association v. Dokter*, 86 *Nev.* 917, 478 *P.* 2d 583 (Sup. Ct. 1970), a case applying law as of before Nevada's adoption of UM legislation, augurs the invalidity of the other insurance exclusion in that state after the adoption of the statute in 1967.

[3]Arizona — *Transportation Insurance Company v. Wade*, 106 *Ariz.* 269, 475 *P.* 2d 253 (Sup. Ct. 1970).

But Arizona ignores the other insurance exclusion to the extent necessary to assure the insured a full $10,000 recovery toward his damages. *Porter v. Empire Fire and Marine Insurance Company*, 106 *Ariz.* 274, 475 *P.* 2d 258 (Sup. Ct. 1970) (as where multiple claimants to the $10,000 limits on the primary policy left the insured with under $10,000 on that recourse).

Arkansas — *M. F. A. Mutual Ins. Co. v. Wallace*, 245 *Ark.* 230, 431 *S. W.* 2d 742 (Sup. Ct. 1968).

Colorado — *Alliance Mutual Casualty Company v. Duerson*, 518 *P.* 2d 1177 (Colo. Sup. Ct. 1974).

Illinois — *Morelock v. Millers' Mutual Ins. Ass'n. of Illinois*, 49 *Ill.* 2d 234, 274 *N. E.* 2d 1 (Sup. Ct. 1971).

jority and minority jurisdictions as to the treatment of multiple claims on different policies issued by a single insurer on more than one car owned by a named insured or issued on cars owned by members of the same household.[4]

New Hampshire — *Maryland Casualty Company v. Howe*, 106 *N. H.* 422, 213 *A.* 2d 420 (Sup. Ct. 1965).

Utah — *Lyon v. Hartford Accident and Indemnity Company*, 25 *Utah* 2d 311, 480 *P.* 2d 739 (Sup. Ct. 1971).

Wisconsin — *Nelson v. Employers Mutual Casualty Company*, 63 *Wis.* 2d 558, 217 *N. W.* 2d 670 (Sup. Ct. 1974).

In the following cases, enforcing an excess-escape clause, *Public Service Mutual Insurance Co. v. Cross*, 38 *A. D.* 2d 930, 330 *N. Y. S.* 2d 224 (1972) and *Miller v. Allstate Insurance Company*, 66 *Wash.* 2d 871, 405 *P.* 2d 712 (Sup. Ct. 1965), there is no mention of any statute; *Darrah v. California State Auto Assoc.*, 259 *Cal. App.* 2d 243, 66 *Cal. Rptr.* 374 (1968) and *Shoffner v. State Farm Mutual Automobile Ins. Co.*, 494 *S. W.* 2d 756 (Tenn. Sup. Ct. 1972) were controlled by statutes expressly permitting an other insurance clause; and *Burcham v. Farmers Insurance Exchange*, 255 *Iowa* 69, 121 *N. W.* 2d 500 (Sup. Ct. 1963), was decided in a state without a statute.

4Note denials of such recovery in majority-rule jurisdictions: *Nationwide Mutual Insurance Company v. Ealy*, 221 *Pa. Super.* 138, 289 *A.* 2d 113 (Super. Ct. 1972) ; *Talbot v. State Farm Mutual Automobile Ins. Co.*, 291 *So.* 2d 699 (Miss. Sup. Ct. 1974) ; *Automobile Club Inter-Insur. Exch. v. Diebold*, 511 *S. W.* 2d 135 (Mo. Ct. App. 1974) ; *American Liberty Insurance Company v. Ranzau, supra* (481 S. W. 2d 793 — Tex. Sup. Ct.). But such recovery was allowed in these majority-rule jurisdictions: *Van Tassel v. Horace Mann, etc., Insurance Company, supra* (207 N. W. 2d 348 — Minn. Sup. Ct.) ; *Meridian Mutual Insurance Company v. Siddons, supra* (451 S. W. 2d 831 — Ky. Ct. Ap.) ; *Johnson v. Travelers Indemnity Co., supra* (269 N. E. 2d 700 — Mass. Sup. Ct.) ; *Clayton v. Alliance Mutual Casualty Co., supra* (512 P. 2d 507 — Kan. Sup. Ct.) ; and *Bose v. American Family Mutual Insurance Co., supra* (181 N. W. 2d 839 — Neb. Sup. Ct.)

A case in a minority-rule jurisdiction which nevertheless allowed such recovery, apparently because only one insurer was involved, is *Glidden v. Farmers Automobile Insurance Ass'n.*, 57 *Ill.* 2d 330, 312 *N. E.* 2d 247 (Sup. Ct. 1974).

We are implying no view on this type of issue. *Cf. Allstate Ins. Co. v. McHugh, supra* (124 *N. J. Super.* 105, aff'd 126 *N. J. Super.* 458).

Hostility has been manifested to the other insurance exclusion in some jurisdictions by finding the excess-escape paragraph thereof in one policy to conflict with or be repugnant to the pro-rata paragraph

The most frequently iterated reasons advanced in the majority-rule opinions are: (a) the respective statutes read in terms of prohibition of the issuance of a *policy* not containing the specified UM coverage, not in terms of how much UM coverage an injured UM claimant may recover; (b) statutory UM limits are minimums, not maximums; (c) effectuation of the other insurance exclusion permits the company to obtain a windfall or unjust enrichment by accepting a premium for UM coverage and then denying the coverage paid for; and (d) the UM statutes are designed for the protection of injured motorists and ought to be interpreted liberally in favor of the broadest indemnification of such motorists short of exceeding the damages sustained.

The common theme of the minority-rule cases is that the purpose of UM statutes is to put a person injured by the negligence of an uninsured motorist in the same, but no better position than if the negligent motorist had been insured for the minimum sums prescribed by the financial responsibility laws. It is regarded as somehow anomalous for the beneficiary of UM coverage to be better off than if he had been injured by a minimally insured motorist. See *Hartford Ins. Co. v. Allstate, supra* (127 *N. J. Super.* at 467).

For reasons already stated, we do not deem helpful the majority rationale so far as based upon the thesis that the statutory UM limits are minimums rather than maximums. Nor do we see any merit in the theory that an other insurance exclusion deprives the insured of consideration for the premium paid for the UM endorsement. The insurer takes a substantial risk even if the exclusion is honored, and the premium presumably has been calculated in the light of the exclusion. See Comment, 52 *Neb. L. Rev., op. cit. supra* (at 170); *Patton v. Safeco Insurance Company of America, supra* (267 N.E. 2d at 863).

of another applicable policy, thereby cancelling both paragraphs. See *Werley v. United Services Automobile Association*, 498 *P.* 2d 112 (Alaska Sup. Ct. 1972); *Smith v. Pacific Auto. Ins. Co.*, 240 *Or.* 167, 400 *P.* 2d 512, 515 (Sup. Ct. 1965).

■ ■ On the other hand, however, there is no persuasive warrant, in construing a statute designed to provide protection by insurance for victims of uninsured motorists, to refuse to read the statute literally when such a reading will subserve the socially desirable policy of adequate indemnification of innocent automobile accident victims. As to the literal import of the New Jersey statute there can be no doubt. It commands that *"no* automobile liability policy" (emphasis added) *shall issue* in this state unless it offers coverage for payment, within stated limits, of what an uninsured motorist would be liable for to an insured for damages for bodily injuries. Since *every* such policy must offer such coverage, and the statute contains no suggestion of relief from its undertaking in favor of an issuing insurer merely because another insurer had assumed the same obligation in favor of the same accident victim, the statute unambiguously grants the victim *prima facie* recourse to any and all policies applicable, subject to the unquestionably implicit condition that his claims in aggregate not exceed his damages.

■ The Legislature must be deemed to have been cognizant that an individual frequently becomes an "insured", named or otherwise included, in more than one automobile liability policy (as here), and thus to have contemplated, when commanding an offer of UM protection to "the insured" in every liability policy issued, that an injured person might have UM recourse on more than one policy. Had that result not been intended, we would expect to find its negation expressed in the statute.

Professor Widiss, the leading scholar in this field, has long regarded the other insurance clause as unwarranted. As he points out, if an insured is riding in a non-owned car with other passengers, a serious accident with an uninsured car can readily reduce the share of UM coverage on the host car of an individual claimant to a negligible sum. To then refuse him any recourse whatever to the UM coverage on his own car, as contended for by the

company in the present case, would render his insurance hollow protection indeed. Widiss, "Perspectives on Uninsured Motorist Coverage", 62 *N. W. U. L. Rev.* 497, 522 (1967); Widiss, "A Guide to Uninsured Motorist Coverage", *op. cit. supra* (at 108–109). As further stated in the latter work, at 112:

> It is true, as some insurers have argued, that if this approach to indemnification is adopted, an insured who is covered by more than one uninsured motorist endorsement will be better off than he would have been had he been injured by a negligent motorist carrying the minimum coverage specified by the financial responsibility laws. However, the conclusion which insurance companies draw from this — that they should be allowed to reduce their liability — does not necessarily follow. A premium has been paid for each of the endorsements and coverage has been issued. It seems both equitable and desirable to permit recovery under more than one endorsement until the claimant is fully indemnified. This is not the same as stacking or pyramiding of coverages — that is, where a claimant recovers several times over for his injuries — which is appropriately criticized and which insurance companies should be entitled to curtail by limitations on the extent of various coverages.

Our approach to this problem accords with principles of statutory construction we have consistently followed in the past in respect of legislation involving automobile insurance — *i. e.*, liberality in effecting the broadest protection of auto accident victims consistent with the language of the pertinent statute. See *Matits v. Nationwide Mutual Ins. Co.*, 33 *N. J.* 488, 495–496 (1960); *Selected Risks Insurance Co. v. Zullo*, 48 *N. J.* 362, 372–373 (1966); *State Farm v. Zurich Am. Ins. Co.*, 62 *N. J.* 155, 168, 180 (1973).

As indicated above, we are cognizant of the force of the contention that the immediate motivation for the adoption of mandatory UM legislation in 1968 was the relief of the Unsatisfied Claim and Judgment Fund. But it by no means follows therefrom that the Legislature contemplated that exact parallelism would ensue between UM relief based on private insurance and that theretofore and thereafter available from the Fund. Judge Bischoff in *Obst v. State*

*Farm Mut. Auto. Ins., supra* (123 *N. J. Super.* at 66–67), has pointed out eleven differences as to availability, incidence and effect of protection as between UM insurance under the statute and Fund liability.

For the reasons stated we are fully satisfied and hold that the excess-escape paragraph of the other insurance provision of the instant UM endorsement is repugnant to the statute and is, as applied to the facts here presented, invalid and ineffective. *Hartford Ins. Co. v. Allstate, supra* (127 *N. J. Super.* 460), is overruled. We reserve any question as to the potential effect of the provision in relation to any different fact situation.

Reversed.

*For reversal*—Chief Justice HUGHES, Justices JACOBS, MOUNTAIN, SULLIVAN, PASHMAN and CLIFFORD and Judge CONFORD—7.

*For affirmance*—None.