199 N.J. Super. 441 (1985)
489 A.2d 1203
NICHOLAS CHILDS AND JOSEPH T. CHILDS, PLAINTIFFS-APPELLANTS,
v.
NEW JERSEY MANUFACTURERS INSURANCE COMPANY, DEFENDANT-RESPONDENT, CROSS-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 13, 1985.
Decided March 14, 1985.
*445 Before Judges PRESSLER, BRODY and COHEN.
Edward F. Lamb argued the cause for appellants (Robinson, Wayne, Levin, Riccio & La Sala, attorneys; Edward F. Lamb and Lawrence P. Platkin, on the brief).
Linda A. Palazzolo argued the cause for respondent (Connell, Foley & Geiser, attorneys; Linda A. Palazzolo, of counsel and on the brief).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
This appeal raises questions relating to "other insurance" clauses in the context of uninsured motorist (UM) endorsements. The primary issue is whether uninsured motorist coverage which contains an illegal excess-escape clause should be construed as providing primary coverage in accordance with the holding of Motor Club of America Ins. Co. v. Phillips, 66 N.J. 277 (1974), or whether it should be reformed and read as providing ordinary excess coverage. The subsidiary question is whether, if the coverage is construed as primary, it is available on a pro tanto or a pro rata basis where the insured has settled with the other primary UM carrier for less than that carrier's pro rata share of the loss. For the reasons hereafter stated, we conclude that the consequence of the illegal escape-excess clause is to render the coverage primary and that the liability of each of the primary carriers remains pro rata, irrespective of the settlement with one of them.
The "other" insurer here is defendant New Jersey Manufacturers Insurance Company (NJM). Plaintiff Nicholas Childs instituted this declaratory action against NJM seeking a declaration that it was liable to him on its UM endorsement. He *446 appeals from a judgment of the Law Division granting NJM's motion for summary judgment dismissing the complaint.
The facts are not in substantial dispute. In 1979 plaintiff was a passenger in a vehicle operated by Claus Rademacher and owned by his father, Robert Rademacher. Claus Rademacher, in order to avoid a collision with an unidentified vehicle, had swerved his car, causing it to be hit by a third vehicle driven by Christopher Milowic and owned by his father, Walter Milowic. Plaintiff was injured in the collision between the Rademacher and Milowic vehicles.
At the time of the collision, the Rademacher vehicle was insured by Allstate Insurance Company (Allstate) by a policy containing the UM endorsement, subject to a $15,000/$30,000 coverage limitation. Plaintiff was also an insured under the NJM policy covering his father's two automobiles. That policy also contained the statutory UM endorsement. Both UM endorsements contained the same "other insurance" clause, each providing that
With respect to bodily injury to an insured while occupying a vehicle not owned by the named insured this coverage shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such vehicle as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.
Plaintiff engaged in settlement negotiations with Allstate, NJM and the Milowic carrier, Aetna Life and Casualty Company (Aetna). NJM took the position that since its UM endorsement provided excess coverage, it had no obligation thereon to plaintiff. It therefore declined to participate in the settlement plaintiff effected with Allstate and Aetna. Under the terms of that settlement, plaintiff released the Rademachers and the Milowics from all liability claims in consideration of the sum of $23,400, to which both Aetna and Allstate contributed. In addition, plaintiff released Allstate in respect of its UM coverage for the sum of $2,000. Claiming that his injuries exceeded the total recovery of $25,400, plaintiff then instituted this action to recover under NJM's UM endorsement.
*447 In response to the original motion and cross-motion of these parties for summary judgment, the trial judge stayed the action, directing arbitration of plaintiff's uninsured motorist claim. The questions to be addressed by the arbitrator were whether there had been an uninsured driver whose negligence contributed to the accident and, if so, the percentage of negligence of each of the three drivers and the total amount of plaintiff's damages. The eventual arbitration award, based on the conclusion that there had been a negligent uninsured driver, apportioned liability as follows: 25% to Rademacher, 50% to Milowic and 25% to the unidentified driver. Plaintiff's damages were fixed at $55,000.
Based on the foregoing, the trial judge concluded that only $13,750 of plaintiff's damages were assessable against the available UM coverage. He also concluded that since NJM was only an excess carrier in respect of UM coverage, plaintiff would be entitled to recourse against that coverage only if his uninsured motorist claim exceeded the $15,000 limitation of Allstate, the primary UM carrier. Since the uninsured motorist claim was less than $15,000, the judge dismissed plaintiff's complaint. Plaintiff appeals. We reverse.[1]
We agree with the trial judge that in view of plaintiff's settlement with Rademacher and Milowic, the other two tortfeasors, his recovery for the negligence of the uninsured driver was limited to that driver's adjudicated percentage of negligence multiplied by the total damage award. That, without question, is the effect of the Comparative Negligence Act, N.J.S.A. 2A:15-5.1, et seq., on the principles enunciated in Theobald v. Angelos, 44 N.J. 228 (1965). See Rogers v. Spady, 147 N.J. Super. 274 (App.Div. 1977). And see Cartel Capital Corp. v. Fireco of New Jersey, 81 N.J. 548, 569-570 (1980); *448 Lee's Hawaiian Islanders, Inc. v. Safety First Prod., 195 N.J. Super. 493, 505-507 (App.Div. 1984).[2] The total UM recovery to which plaintiff is entitled is limited, therefore, as the trial judge concluded, to $13,750. The trial judge concluded further that NJM's coverage was excess, relieving it from liability since the UM claim did not exceed the primary coverage. We disagree with this conclusion.
Our point of departure from the trial judge's reasoning is his erroneous characterization of the NJM coverage as excess. This characterization, in our view, fails to appreciate the significant distinction between excess coverage and escape-excess coverage. In general terms, excess coverage is unqualifiedly available to cover that portion of the loss which exceeds the coverage limitation of the primary insurance. An escape clause ordinarily serves to relieve the carrier of any responsibility for the loss under its policy if there is any other insurance covering the loss, irrespective of the amount of coverage provided by the other insurance and irrespective of whether the loss exceeds the other coverage. An escape-excess clause is a hybrid provision which renders the coverage available as excess insurance only to the extent to which the maximum coverage limit exceeds the maximum coverage limit of the primary insurance. If the coverage limit of the primary insurance is the same or more than that provided by the escape-excess carrier, then the escape component of the clause is fully operational. See generally 8A Appleman, Insurance, § 4909 at 383-393, § 4910 at 457-458 (1981). If the NJM clause here had been a genuine excess clause by which NJM undertook payment of that portion of the loss which exceeded the coverage of the *449 host's UM endorsement, the clause might have been valid and effective. See Ciecka v. Transamerica Insurance Group, 81 N.J. 421, 429 (1979), expressly leaving open that question. But the fact is that the NJM clause here is not a genuine excess clause but rather an escape-excess clause drawn in virtually identical language as the escape-excess clause condemned by the Court in Motor Club of America Ins. Co. v. Phillips, supra, 66 N.J. at 281.
The primary reason for the invalidation of the escape-excess clause in Phillips was its defeat of what was held to be a claimant's legitimate and statutorily-accorded right to the "stacking" of UM coverage where fair compensation for the injury for which an uninsured motorist is responsible is in excess of the coverage provided by a single available UM endorsement. And see Lundy v. Aetna Cas. & Sur. Co., 92 N.J. 550 (1983). We are aware that N.J.S.A. 17:28-1.1 was amended by L. 1983, c. 362, §§ 1, 2, effective October 1983, by the addition of subsection (c), which prohibits stacking. Nevertheless, when the NJM policy here was issued and when plaintiff was injured, the right to stacking was intact and, accordingly, the NJM escape-excess clause was inoperative. The question then is whether the illegality of the escape-excess clause should have the same consequence accorded it by Phillips, namely, rendering that coverage primary along with the primary coverage of the host's policy or whether, as NJM suggests, only the escape component of the escape-excess clause should be invalidated, leaving intact the excess component as a valid "other insurance" mechanism.
Even assuming the validity prior to the anti-stacking legislation of a true excess clause, we see no reason why we should reform NJM's policy to delete only the escape provision. First, that option was open to the Supreme Court in Phillips, and it did not then accept it. Furthermore, Phillips was decided four or five years before NJM issued the policy here. It was therefore long since on notice that the escape-excess *450 clause had been deemed to be in violation of N.J.S.A. 17:28-1.1, that it would not be accorded its intended effect by the courts and that it would, if included in the UM endorsement, render that coverage primary. These propositions must all surely be deemed to have been within its contemplation when it issued this policy. Had it been of the view that a simple excess clause would not have run afoul of the statute, it could easily have substituted such a clause for the illegal clause. It did not do so, and we see no reason for us to do it. We therefore conclude that Phillips controls and, hence, that the NJM UM coverage is available equally with Allstate's.
There are here two available NJM UM coverages because the policy insured two automobiles owned by plaintiff's father. See Lundy v. Aetna Cas. & Sur. Co., supra. Thus, if there had been no settlement here with one of the carriers, the consequence of the availability of the three primary coverages for a loss less than any single coverage would have resulted in a pro rata apportionment between the two carriers  NJM being responsible for two-thirds of the $13,750 attributable to the uninsured motorist, and Allstate responsible for one-third. See Cosmopolitan Mutual Ins. Co. v. Continental Cas. Co., 28 N.J. 554, 562 (1959). NJM is therefore liable for at least $9,166.67. Plaintiff contends, however, that the effect of his settlement with Allstate should be a pro tanto rather than a pro rata reduction of NJM's primary coverage responsibility, requiring NJM to pay the full difference between the uninsured motorist's $13,750 portion of damages and Allstate's $2,000 UM settlement. We disagree with this contention and hold that the settlement with one primary carrier in an amount less than its pro rata share does not subject the other primary carrier to a responsibility in excess of its actual pro rata share.
It is a generally accepted principle of insurance law that where an insured is entitled to a single recovery for a loss which is insured against by two primary carriers, the pro rata obligation of the carriers also confers on each the right to seek *451 contribution from the other in the event it has paid the insured more than its share. See 8A Appleman, Insurance, §§ 4921-4922 at 513 (1981). Indeed, this is the principle which was applied in Cosmopolitan Mut. Ins. Co. v. Continental Cas. Co., supra. There, the plaintiff carrier, having paid a full settlement to the insured, sought reimbursement from the defendant carrier on the ground that defendant, not it, was primarily liable. The Court's determination that the repugnant excess clauses in the two policies rendered each carrier primary as a matter of law resulted in the adjudication of the right of plaintiff to reimbursement from defendant in the amount of half of its payment to the insured.
We are satisfied that the contribution right among carriers which is subsumed by their respective pro rata obligations cannot be unilaterally abrogated by the voluntary act of the insured. Thus, if an insured releases one carrier in consideration of less than its pro rata share, he cannot thereby increase the payment obligation of the other pro rata carrier. Cf. Theobald v. Angelos, 44 N.J. 228 (1965). We further point out that these common-law principles have been incorporated by N.J.S.A. 17:28-1.1(c) (L. 1983, c. 362), which, in barring the stacking of UM coverages, imposes upon all available UM carriers a pro rata  and not more than a pro rata  obligation.[3]
The final point raised by this appeal is plaintiff's claim to an award of attorney's fees, prejudgment interest and costs in the event of a reversal of the judgment below. Since UM coverage is a matter of direct claim between the insurer and insured rather than an indemnity or liability policy protecting the insured against his own responsibility to another, we *452 are constrained to conclude that R. 4:42-9(a)(6) does not apply. See Vesley v. Cambridge Mutual Fire Ins. Co., 93 N.J. 323 (1983), aff'g 189 N.J. Super. 521 (App.Div. 1981); Miller v. N.J. Ins. Underwriting Ass'n, 188 N.J. Super. 175 (App.Div. 1983), certif. den. 94 N.J. 508 (1983); Kistler v. N.J. Mfts. Ins. Co., 172 N.J. Super. 324 (App.Div. 1980). Nor is there any other basis in statute, rule or contract justifying a counsel fee award. We are, however, satisfied that plaintiff is entitled to costs pursuant to R. 4:42-8 and to prejudgment interest calculated in accordance with the equitable principles applicable to contract claims stated by Bak-A-Lum Corp. v. Alcoa Building Prod., 69 N.J. 123, 131 (1976). The determination of prejudgment interest should be made in the first instance in the trial court.
The judgment dismissing plaintiff's complaint is reversed. We remand to the trial court for further proceedings respecting prejudgment interest and entry of judgment in plaintiff's favor consistent herewith. We do not retain jurisdiction.
NOTES
[1] We note that NJM filed a notice of cross-appeal. Since its brief does not challenge any of the trial judge's rulings, we deem the cross-appeal abandoned. See Design-4 v. Masen Mountainside Inn, Inc., 148 N.J. Super. 290, 292 (App.Div. 1977), certif. den. 75 N.J. 6 (1977).
[2] Since adding the uninsured motorist portion of total damages to the sum recovered by plaintiff by settlement with the other two tortfeasors and Allstate yields an amount less than the adjudicated total damages, we need not confront the problems arising from favorable settlements with insured motorists which were raised in Riccio v. Prudential Property & Cas. Ins. Co., 195 N.J. Super. 167 (App.Div. 1984), and, therefore, express no opinion respecting the views therein expressed.
[3] N.J.S.A. 17:28-1.1(c), rather than adopting the equal sharing scheme of Cosmopolitan, provides that "the recovery shall be prorated between the applicable coverages as the limits of each coverage bear to the total of the limits." This scheme effectively results in equal sharing, however, if, as is typical, each of the coverages is limited to the statutory requirement.