NICHOLAS CHILDS AND JOSEPH T. CHILDS, PLAINTIFFS-AP-PELLANTS, v. NEW JERSEY MANUFACTURERS INSURANCE COMPANY, DEFENDANT-RESPONDENT.

Argued October 7, 1985—Decided September 30, 1987.

*Edward F. Lamb* argued the cause for appellants (*Robinson, Wayne, Levin, Riccio & La Sala,* attorneys; *Edward F. Lamb* and *Lawrence P. Platkin,* on the briefs).

*Linda A. Palazzolo* argued the cause for respondent (*Connell, Foley & Geiser,* attorneys).

PER CURIAM.

Like *Riccio v. Prudential Property & Casualty Insurance Company,* 108 *N.J.* 493 (1987), also decided today, this appeal raises issues of the effect of a liability settlement on uninsured motorist (UM) claims. It poses as well the question of how settlement of a UM claim by one insurance carrier affects another carrier's liability to the same claimant under its UM endorsements.

I

Plaintiffs are Nicholas Childs and Joseph T. Childs, his father. Our use hereafter of "plaintiff" is in reference to Nicholas, the injured plaintiff. As recited in the opinion of the Appellate Division, 199 *N.J.Super.* 441 (1985), the essential facts of the dispute before us are as follows:

> In 1979 plaintiff was a passenger in a vehicle operated by Claus Rademacher, and owned by his father, Robert Rademacher. Claus Rademacher, in order to avoid a collision with an unidentified vehicle, had swerved his car, causing it to be hit by a third vehicle driven by Christopher Milowic and owned by his father, Walter Milowic. Plaintiff was injured in the collision between the Rademacher and Milowic vehicles.
>
> At the time of the collision, the Rademacher vehicle was insured by Allstate Insurance Company (Allstate) by a policy containing the UM endorsement, subject to a $15,000/$30,000 coverage limitation. Plaintiff was also an insured under the NJM policy covering his father's two automobiles. That policy also contained the statutory UM endorsement. Both UM endorsements contained the same "other insurance" clause, each providing that
>
>> With respect to bodily injury to an insured while occupying a vehicle not owned by the named insured this coverage shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such vehicle as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.
>
> Plaintiff engaged in settlement negotiations with Allstate, NJM and the Milowic carrier, Aetna Life and Casualty Company (Aetna). NJM took the position that since its UM endorsement provided excess coverage, it had no obligation thereon to plaintiff. It therefore declined to participate in the settlement plaintiff effected with Allstate and Aetna. Under the terms of that settlement, plaintiff released the Rademachers and the Milowics from all liability claims in consideration of the sum of $23,400, to which both Aetna and Allstate contributed. In addition, plaintiff released Allstate in respect of its

UM coverage for the sum of $2,000. Claiming that his injuries exceeded the total recovery of $25,400, plaintiff then instituted this [declaratory judgment] action to recover under NJM's UM endorsement.

In response to the original motion and cross-motion of these parties for summary judgment, the trial judge stayed the action, directing arbitration of plaintiff's uninsured motorist claim. The questions to be addressed by the arbitrator were whether there had been an uninsured driver whose negligence contributed to the accident and, if so, the percentage of negligence of each of the three drivers and the total amount of plaintiff's damages. The eventual arbitration award, based on the conclusion that there had been a negligent uninsured driver, apportioned liability as follows: 25% to Rademacher, 50% to Milowic and 25% to the unidentified driver. Plaintiff's damages were fixed at $55,000.

Based on the foregoing, the trial judge concluded that only $13,750 of plaintiff's damages were assessable against the available UM coverage. He also concluded that since NJM was only an excess carrier in respect of UM coverage, plaintiff would be entitled to recourse against that coverage only if his uninsured motorist claim exceeded the $15,000 limitation of Allstate, the primary UM carrier. Since the uninsured motorist claim was less than $15,000, the judge dismissed plaintiff's complaint. [199 *N.J.Super.* at 445–47.]

On appeal to the Appellate Division the "primary issue" was whether NJM's UM endorsement, which contains an illegal escape-excess clause as part of the "other insurance" provision quoted above, should be construed as providing primary coverage in accordance with the holding of *Motor Club of America Insurance Co. v. Phillips,* 66 *N.J.* 277 (1974), or whether it should be reformed and read as providing ordinary excess coverage. *Id.* 199 *N.J.Super.* at 445. As the court pointed out, the reason for the invalidation of the escape-excess clause in *Phillips* was "its defeat of what was held to be a claimant's legitimate and statutorily-accorded right to the 'stacking' of UM coverage where fair compensation for the injury for which an uninsured motorist is responsible is in excess of the coverage provided by a single available UM endorsement," *id.* at 449; and inasmuch as NJM's policy was issued and plaintiff was injured before the effective date of the "anti-stacking" amendment to *N.J.S.A.* 17:28–1.1, the right to stacking was intact and the NJM escape-excess clause was therefore inoperative. *Ibid.* The Appellate Division held, *id.* at 445, that "the consequence of the illegal escape-excess clause is to render the coverage primary," an issue raised in NJM's cross-petition for certifica-

tion to this Court, which we denied. 101 *N.J.* 276 (1985). Hence we treat all the UM endorsements involved in this case—there are three: one in the Allstate policy and, because NJM covered two vehicles in the Childs family, two with NJM—as having provided primary coverage.

The subsidiary question before the Appellate Division was whether, if NJM's coverage was construed as primary, it was available on a *pro tanto* or a *pro rata* basis where the insured has settled with the other primary UM carrier, Allstate, for less than that carrier's *pro rata* share of the loss. 199 *N.J.Super.* at 445. On that issue the Appellate Division agreed with the trial court that in view of plaintiff's settlement with Rademacher and Milowic, his recovery for the negligence of the uninsured driver was limited to that driver's adjudicated percentage of negligence multiplied by the total damage award—this because of the effect on the Joint Tortfeasors Contribution Law, *N.J.S. A.* 2A:53A–1 to –5, of the Comparative Negligence Act, *N.J.S.A.* 2A:15–5.1 to –5.3. 199 *N.J.Super.* at 447–48. Because the "phantom" uninsured had been determined to be twenty-five percent at fault and the damages had been calculated at $55,-000, the Appellate Division held that "[t]he total UM recovery to which plaintiff is entitled is limited, therefore, as the trial judge concluded, to $13,750." *Ibid.* The court declared:

> There are here two available NJM UM coverages because the policy insured two automobiles owned by plaintiff's father. *See Lundy v. Aetna Casualty & Sur. Co.* [92 *N.J.* 550 (1983)]. Thus, if there had been no settlement here with one of the carriers, the consequence of the availability of the three primary coverages for a loss less than any single coverage would have resulted in a *pro rata* apportionment between the two carriers—NJM being responsible for two-thirds of the $13,750 attributable to the uninsured motorist, and Allstate responsible for one-third. *See Cosmopolitan Mutual Ins. Co. v. Continental Casualty Co.*, 28 *N.J.* 554, 562 (1959). NJM is therefore liable for at least $9,166.67. Plaintiff contends, however, that the effect of his settlement with Allstate should be a *pro tanto* rather than a *pro rata* reduction of NJM's primary coverage responsibility, requiring NJM to pay the full difference between the uninsured motorist's $13,750 portion of damages and Allstate's $2,000 UM settlement. We disagree with this contention and hold that the settlement with one primary carrier in an amount less than its *pro rata* share does not subject the other primary carrier to a responsibility in excess of its actual *pro rata* share. [199 *N.J.Super.* at 450.]

We granted plaintiff's petition for certification, 101 *N.J.* 276 (1985), to review these latter determinations, and now reverse.

## II

It is first apparent that the court below misperceived the thrust of plaintiff's *pro tanto* argument. Plaintiff was not seeking a reduction of a UM *pro rata* portion of $13,750 by the prior UM settlement with Allstate of $2,000; rather, as his Appellate Division brief makes clear, he contended—and renews the contention here—that the UM liability was joint and several in the amount of $55,000, from which there should be a *pro tanto* reduction of $25,400 for the amount already received in settlement ($23,400 from the Aetna and Allstate liability policies, and an additional $2,000 from Allstate's UM endorsement). That leaves a balance of $29,600 that plaintiff contends is owing under the two UM endorsements ($15,000 each) issued by NJM.

The first question—how the payment of $23,400 from the Aetna and Allstate liability coverages should be treated—is fully answered by our decision today in *Riccio v. Prudential Property & Casualty Insurance Company, supra,* 108 *N.J.* 493. We there held that when, as in this case, the one seeking the benefit of the UM coverage is an innocent claimant, the respective degrees of fault of the drivers is an entirely irrelevant consideration, for the only liability question before the arbitrator is the liability, in any degree, of the uninsured, *id.* at 498; and further that there should be a *pro tanto* credit for any liability settlement against the claimant's total damages as determined by an arbitrator in a UM proceeding. *Id.* at 505. Therefore in this case there should first be a credit against the total damages of $55,000 for the $23,400 paid out of the Aetna and Allstate liability policies. That leaves plaintiff unreimbursed to the extent of $31,600.

The question then is narrowed to what effect plaintiff's settlement of $2,000 out of Allstate's UM coverage should have on NJM's total UM exposure of $30,000 from two UM endorse-

ments. A *pro tanto* credit reduces NJM's liability by the $2,000 Allstate settlement to $29,600. A *pro rata* credit operates on a different theory and produces a different result. For example, when one defendant in a tort case settles, there is "a credit against the amount he would otherwise have to pay on the verdict of that amount attributable to the settling defendant's percentage share of negligence or responsibility as determined by the fact-finder." *Tefft v. Tefft*, 192 *N.J.Super.* 561, 570 (App.Div.1983). By analogy, the *pro rata* share assignable to each UM policy involved in this case is one-third, whether calculated on the "equal sharing" method of *Cosmopolitan Mutual Insurance Co. v. Continental Casualty Co.*, 28 *N.J.* 554 (1959), on which the Appellate Division relied, or under the amended version of *N.J.S.A.* 17:28–1.1(c) (*L.* 1983, *c.* 362) (not applicable here), which provides that "the recovery shall be prorated between the applicable coverages as the limits of each coverage bear to the total of the limits," because the limit of each UM endorsement is the same—the $15,000 statutory minimum. Application of a *pro rata* credit in this case would reduce NJM's liability to $21,066.66—two-thirds of $31,600, the unreimbursed balance of the $55,000 award of damages as reduced by the liability settlement of $23,400 from Allstate and Aetna. We hold that for pre-anti-stacking amendment cases such as this one, the credit should be *pro tanto* rather than *pro rata*, and therefore the unreimbursed balance of plaintiff's damages, $31,600, is reduced by Allstate's $2,000 UM settlement to $29,600, all of which is NJM's UM obligation.

In support of this holding are the same reasons that led us in *Riccio v. Prudential Property & Casualty Ins. Co., supra,* 108 *N.J.* 493, to apply a *pro tanto* credit for a tort settlement against an arbitrator's award of damages in a UM proceeding. The "essential purpose of the [UM] legislation is to make the victim whole" *id.* at 504, whereas the policy behind the Joint Tortfeasors Contribution Law and the Comparative Negligence Act is one of equity among joint tortfeasors—achieved by meting out responsibility among them on a *pro rata* basis. *Id.* at 508–09.

The general proposition that UM coverage should be available to compensate fully—but not more than fully—the victim of a negligent uninsured driver is defeated by a *pro rata* credit. We recognize full well that the amended statute, *N.J.S.A.* 17:28–1.1(c), contains just such a provision, but this case is controlled by the pre-amendment law, as was *Riccio*.

A *pro rata* credit for a settlement by one UM carrier works counter to the legislation's goal of full compensation. If the settlement is an unfavorable one for the victim (as in this case, where in fact plaintiff made two "bad" settlements, one in settling for $23,400 Rademacher's and Milowic's seventy-five percent liability in respect of $55,000 damages, and the other in accepting $2,000 for Allstate's *pro rata* UM liability of $10,533 (one-third of $31,600)), the *pro rata* rule results in under compensation. A *pro rata* credit for a low UM settlement effectively reduces the remaining UM coverage below the statutory minimum, precisely what this Court has held that carriers cannot do on their own. *E.g., Ciecka v. Transamerica Ins. Group,* 81 *N.J.* 421 (1979); *Motor Club of America v. Phillips,* 66 *N.J.* 277 (1974). If, however, the settlement is a "good" one for the victim, as the liability settlement in *Riccio* was, the *pro rata* credit results in overcompensation. Only a *pro tanto* credit guarantees full compensation for the damages, subject to the stacked policy limits, without danger of overcompensation.

We are not concerned in this context with any principle of equity among joint tortfeasors. UM coverage "is not insurance upon, nor for the benefit of, the uninsured tortfeasor * * *. There is no privity of contract between an insurer and such tortfeasor; it does not stand in his shoes, and it owes him no duty." *Riccio, supra,* 108 *N.J.* at 499 (quoting J. and J. Appleman, 8D *Appleman, Insurance Law & Practice* § 5071 at 81–83). And even if UM carriers were perceived as "representing" uninsured motorists, both UM carriers in this case would then represent the same party—the "phantom" uninsured—and could not be tortfeasors in respect of each other.

Finally, we find persuasive the treatment of a closely analogous situation by the Supreme Court of Texas in *American Motorist Insurance Co. v. Briggs*, 514 *S.W.*2d 233 (1974). In *Briggs* plaintiffs, husband and wife, were passengers in an employer's car when it was struck by a hit-and-run driver. The husband's injuries were ultimately valued at $11,230.39, the wife's at $6,115.95. Before the total damages were assessed, plaintiffs settled with the employer's UM carrier for $5,750 each. Both plaintiffs were insured under their own UM policy, and they proceeded against it. Their UM policy contained both of the "other insurance" clauses found in the NJM policy before us: the escape-excess clause quoted *supra* at 508–09, and a *pro rata* clause (in clear violation of the proscription in *Lundy v. Aetna Casualty & Sur. Co.*, 92 *N.J.* 550, 555 (1983), against any reduction in the amounts mandated by the statute), which reads as follows:

> Except as provided in the foregoing paragraph [the escape-excess provision], if the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance and the company shall not be liable for a greater proportion of any loss to which this coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance.

The UM carrier in *Briggs* relied on the escape-excess clause, admitting the invalidity of the "escape" element (based on a Texas case similar to *Phillips* ) and asserting that it ought to be construed as a simple excess clause. As such, the carrier would be entitled to a credit for the full amount of the limits of the primary policy ($10,000), even though the settlement was for less than this amount. Such a credit would have generated precisely the same result as a *pro rata* credit. The *Briggs* court rejected this position, insisting on a credit of the actual compensation paid in settlement:

> [W]e now hold that the statute requires that whenever coverage exists under the uninsured motorist endorsement, the person covered has a cause of action on the policy for his actual damages to the extent of the policy limits without regard to the existence of other insurance. If coverage exists under two or more policies, liability on the policies is joint and several to the extent of

plaintiff's actual damages, subject to the qualification that no insurer may be required to pay in excess of its policy limits. [514 *S.W.*2d at 236.]

Although *Briggs* did not explicitly consider a *pro rata* credit, the reasoning that leads to a rejection of a credit in the amount of the settling "primary" carrier's policy limits militates equally against a *pro rata* credit for a settling UM carrier.

### III

Our holding in favor of a *pro tanto* rule raises the question of whether a nonsettling UM carrier can obtain contribution from another UM carrier that has settled for less than its *pro rata* share. That issue is not before us, this being a claim by an insured against his insurer, not a suit by one insurance carrier against another. Although we have serious doubts that any right of contribution exists, we will defer ultimate resolution for the occasion, if ever it arises, when we are called on to decide the point with the benefit of full briefing and argument.

Reversed. The cause is remanded to the Law Division for entry of judgment in favor of plaintiff against NJM for $29,600, together with interest and costs of suit.

*For reversal and remandment*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*For affirmance*—None.