701 A.2d 732

NORINE E. BARNETT, PLAINTIFF–RESPONDENT, v. PRU-
DENTIAL PROPERTY AND CASUALTY INSURANCE
COMPANY, DEFENDANT–APPELLANT.

PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPA-
NY, PLAINTIFF–APPELLANT, v. NORINE E. BARNETT AND
CORNELIUS S. BARNETT, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued September 30, 1997—Decided October 22, 1997.

574

Before Judges PRESSLER, CONLEY and CARCHMAN.

*Michael J. Breslin,* argued the cause for appellant (*Breslin & McNerney,* attorneys; *Daniel P. McNerney,* on the brief).

*Thomas M. Mulcahy,* argued the cause for respondent (*Purcell, Ries, Shannon, Mulcahy & O'Neill,* attorneys; *Mr. Mulcahy* and *Susan A. Lawless,* on the brief).

The opinion of the court was delivered by

CONLEY, J.A.D.

This is another underinsured motorist (UIM) appeal generated by *Aubrey v. Harleysville Ins. Cos.,* 140 *N.J.* 397, 658 *A.*2d 1246 (1995) (*Aubrey* ). Defendant appeals a judgment entered in the parties' consolidated actions arising from plaintiff's efforts to obtain UIM coverage as a family member under her father's automobile policy issued by defendant. Pursuant to her complaint seeking UIM coverage, plaintiff obtained a favorable arbitration award in response to which defendant filed a declaratory judgment action in light of *Aubrey.* As a result, the procedural history of these actions has been extensive and somewhat complex. Ultimately, the two actions were consolidated and, finally by judgment entered December 20, 1996, the trial judge confirmed the arbitra-

tor's award, rejected defendant's claim that UIM coverage was precluded under *Aubrey,* and awarded counsel fees to plaintiff pursuant to *R.* 4:42–9(a)(6).[1]

The underlying facts relating to plaintiff's pursuit of UIM coverage under her father's policy are as follows. On May 21, 1989, plaintiff was a front seat passenger in an automobile owned and operated by Joseph Manero. At the same time, Lucia Martinez was driving a vehicle travelling in the wrong direction on a one-way street which entered an intersection against a red light and struck Manero's vehicle on the passenger's side. As a result of the accident, plaintiff suffered injuries that required extended medical treatment.

On the day of the accident, plaintiff, then thirty-four, maintained her primary residence at her parents' home. She also rented an apartment which she used when she was required to work evening hours at her job. Defendant conducted an investigation on plaintiff's claim that she was a family member insured and has never disputed that her primary residence was at her parent's home.

Prior to the accident, plaintiff's father, Cornelius Barnett, had purchased an insurance policy from defendant that covered "resident relative(s)" of his household and provided total UIM benefits of $100,000.[2] Plaintiff also had her own separate insurance policy with the St. Paul Insurance Company (St.Paul) that provided UIM benefits of $25,000.

---

[1] The December 20, 1996 order awarded a specific amount of counsel fees. However, by order entered January 30, 1997, the amount of counsel fees awarded under the December 20, 1996 order was vacated, and a plenary hearing as to that amount was directed to be held. To our knowledge, no hearing has been held and no further order has been entered as to the amount of counsel fees. The December 20, 1996, order, therefore, is not, technically, a final judgment. To resolve all the issues before us without further delay or cost to the parties, we grant leave *nunc pro tunc* to appeal the December 20, 1996 judgment.

[2] The parties do not dispute that "family member" coverage is provided under the father's policy.

Plaintiff subsequently filed a liability action against Martinez and Manero. On January 4, 1991, mandatory, non-binding arbitration was held in plaintiff's case against Martinez and Manero. The arbitrator found that plaintiff was not liable, found that Martinez and Manero were fully liable, awarded plaintiff damages totalling $275,000, and apportioned damages between Martinez and Manero. Yet, Martinez and Manero only had liability policies providing $15,000 in coverage each. Thereafter, on separate occasions between July and August 1991, plaintiff gave St. Paul and defendant notice of her intent to settle the underlying liability action for a total of $29,000. The settlement consisted of the maximum of Martinez's liability coverage and $14,000 of Manero's liability coverage. Defendant then conducted an investigation of Martinez's and Manero's assets, and on October 9, 1991, with notice of plaintiff's UIM claim under her father's policy, defendant authorized plaintiff to accept the settlement. Ultimately, defendant offered to settle her UIM claim for less than the available coverage under her father's policy. Plaintiff rejected that offer and, on September 1, 1993, filed a complaint seeking the full amount she claimed she was entitled to under her father's policy. On plaintiff's order to show cause, the matter was referred to contractual arbitration under the pertinent provisions of the policy.

Pursuant thereto, the award would become final unless it exceeded "the [statutory] financial responsibility limits" and, if so, the right to trial "must be exercised within 30 days of the award." On September 20, 1995, the arbitrators awarded plaintiff $100,000 in damages. Within five days of the arbitrator's award, on September 25, 1995, defendant expressed its rejection of that award. It did so on the sole basis of *Aubrey,* and on October 31, 1995, filed its declaratory judgment action in reliance on *Aubrey.* As far as we can tell, defendant did not file a demand for a jury trial until July 1996 as part of its answer to plaintiff's counterclaim in the declaratory judgment action. The matters were consolidated and, finally, the trial judge rejected defendant's demand for trial *de novo* and rejected its claim that *Aubrey* precluded UIM

coverage under the father's policy, entering an order enforcing plaintiff's claim under defendant's UIM policy and granting plaintiff counsel fees. This appeal ensued.

On appeal, defendant contends:

POINT I. THE TRIAL COURT INCORRECTLY INTERPRETED *AUBREY V. HARLEYSVILLE* AND ERRED IN DENYING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.

POINT II. THE TRIAL COURT ERRED IN DENYING THE DEFENDANT A JURY TRIAL ON THE ISSUE OF DAMAGES.

POINT III. THE TRIAL COURT ERRED IN GRANTING THE PLAINTIFF AN ORDER PERMITTING ATTORNEY'S FEES AND COSTS UNDER A CLAIM FOR UIM BENEFITS.

We deal briefly with points II and III and then address the primary issue of coverage asserted in point I.

## I

■ As to point III and the award of counsel fees, we agree that there exists no legal basis for counsel fees here. This was not an action on a liability or an indemnity policy within the meaning of *R.* 4:42–9(a)(6). *E.g., New Jersey Mfrs. Ins. Co. v. Breen,* 297 *N.J.Super.* 503, 516–17, 688 *A.*2d 647 (App.Div.), *certif. granted,* 149 *N.J.* 408, 694 *A.*2d 194 (1997) ("[a]n action to collect under the underinsured motorist coverage of a New Jersey automobile policy is not within the category of suits in which *R.* 4:42–9(a)(6) permits an attorney's fee to be awarded."); *Goodwin v. Rutgers Cas. Ins. Co.,* 223 *N.J.Super.* 195, 199, 538 *A.*2d 425 (App.Div.1988); *Childs v. New Jersey Mfrs. Ins. Co.,* 199 *N.J.Super.* 441, 451–52, 489 *A.*2d 1203 (App.Div.1985), *rev'd on other grounds,* 108 *N.J.* 506, 531 *A.*2d 723 (1987).

## II

■ As to point II, we point out no more than that defendant's own binding arbitration provision required it to demand a jury trial on the arbitrator's award within 30 days of the decision. Of course, "the duty to arbitrate, and the scope of the arbitration, are dependent solely on the parties' agreement." *E.g., Cohen v.*

*Allstate Ins. Co.,* 231 *N.J.Super.* 97, 100–01, 555 *A.*2d 21 (App. Div.), *certif. denied,* 117 *N.J.* 87, 563 *A.*2d 846 (1989). Defendant asserts that its letter to plaintiff disclaiming acceptance of the award as to coverage in light of *Aubrey,* sent five days after the award, constitutes a demand for jury trial under the language of the policy. It does not. *Compare Verbiest v. New Jersey Full Ins. Underwriting Ass'n,* 256 *N.J.Super.* 85, 89, 606 *A.*2d 420 (App.Div.1992) ("[s]ince the carrier notified the trial court and plaintiffs ... [within the time required under the policy] that it 'has *rejected the award* and *is demanding a trial,*' the arbitration award was a nullity." (emphasis added)). The objective of defendant, and more importantly the thrust of its notice to plaintiff, was as to the underlying coverage issue in light of *Aubrey.* It was not focused upon the amount of damages ascertained by the arbitration. More importantly, there was never a demand for jury trial within the 30 days required under the arbitration provision.

■ Moreover, we do not think the contractual arbitration provision permits a jury trial under the circumstances here. Pursuant thereto, a jury trial may be demanded if an arbitration award exceeds the "limits" of the financial responsibility law, *N.J.S.A.* 17:28–1.1. It is undisputed here that the arbitrator's award exceeded the minimum liability limit but not the maximum UIM limit. *N.J.S.A.* 17:28–1.1(a), (b).

We addressed arbitration clauses in *D'Antonio v. State Farm Mutual Auto. Ins. Co.,* 262 *N.J.Super.* 247, 620 *A.*2d 1060 (App. Div.1993) and *Cohen v. Allstate Ins. Co.,* 231 *N.J.Super.* 97, 100, 555 *A.*2d 21 (App.Div.), *certif. denied,* 117 *N.J.* 87, 563 *A.*2d 846 (1989). The particular language there provided that an arbitration award would not be binding if it exceeded "the *minimum* limit for *liability* specified by the financial responsibility law of New Jersey." (Emphasis added). The policies were clear that the pertinent limit by which the award was to be measured was the "minimum liability" limit set forth in *N.J.S.A.* 17:28–1.1(a). We, therefore, measured the arbitrators' awards in both cases against that statutory minimum. *See D'Antonio v. State Farm Mutual*

*Auto. Ins. Co., supra,* 262 *N.J.Super.* at 250, 620 *A.*2d 1060; *Cohen v. Allstate Ins. Co., supra,* 231 *N.J.Super.* at 100 n. 1, 555 *A.*2d 21. However, in the present matter the word "limits" is not modified by "minimum" or "liability." Moreover, it is plural, suggesting both the minimum liability limit set forth in *N.J.S.A.* 17:28–1.1(a) and the maximum UM and UIM limit set forth in *N.J.S.A.* 17:28–1.1(b). *See Taylor v. National Union Fire Ins. Co. of Pittsburgh,* 289 *N.J.Super.* 593, 601, 674 *A.*2d 634 (App. Div.), *certif. denied,* 145 *N.J.* 376, 678 *A.*2d 716 (1996) ("[w]e agree ... that as a matter of ordinary parlance the phrase 'statutory limits' ... can mean either the floor or the ceiling, *i.e.,* either the statutory minimum or the statutory maximum."). Unmodified, therefore, the word "limits" is, at best, ambiguous. *Ibid.* Ambiguities in insurance contracts ordinarily are construed in favor of an insured and against the insurer. *See Voorhees v. Preferred Mut. Ins. Co.,* 128 *N.J.* 165, 178, 607 *A.*2d 1255 (1992); *Sparks v. St. Paul Ins. Co.,* 100 *N.J.* 325, 336, 495 *A.*2d 406 (1985); *Wickner v. American Reliance Ins. Co.,* 273 *N.J.Super.* 560, 568, 642 *A.*2d 1046 (App.Div.1994), *aff'd,* 141 *N.J.* 392, 661 *A.*2d 1256 (1995). We see no reason why we should not do so here. Since the arbitration award does not exceed the maximum UIM limit, that award is binding.

### III

Finally, we address the predominant issue of coverage, that is the application of *Aubrey.* Defendant contends that *Aubrey* holds that a UIM insured is limited to his or her own personal policy and that therefore plaintiff here can not look to UIM coverage under her father's policy. Under her father's policy, plaintiff is an insured as a "family member," though she is not a named insured. Given the Supreme Court's clarification of *Aubrey* in *French v. New Jersey School Board Ass'n.,* 149 *N.J.* 478, 694 *A.*2d 1008 (1997), we are convinced *Aubrey* does not preclude UIM benefits under the father's policy because plaintiff is an insured as a "family member."

To begin with, the discussion of UIM coverage as personal to the insured in *Aubrey,* and as relied upon by defendant here, was *dicta.* The issue that we decided in *Aubrey,* and which was directly before the Supreme Court, involved a contractual interpretation of a certain "step down" provision in the "nonpersonal" "other" Harleysville policy. We concluded plaintiff Aubrey was insured thereunder; the Supreme Court disagreed. That was the critical issue as to Aubrey's entitlement to UIM under the Harleysville policy. Although, therefore, the vehicle she was operating was a covered vehicle under that policy, she was not an insured, either designated, or as an employee, or as an "other insured." Under those circumstances, her presence in the covered vehicle was "fortuitous," and her only recourse was to her own policy, there being no other policies available. *Taylor v. National Union Fire Ins. Co., supra,* 289 *N.J.Super.* at 599, 674 *A.*2d 634.

■ *Aubrey* has generated much debate regarding the Court's reference to an insured's "personal" UIM policy. We are convinced that debate has been put to rest by *French.* In upholding the right of an employee to UIM coverage as an "other insured" under the employer's policy, the Supreme Court in *French* said:

we note the problem that *Aubrey* has apparently been interpreted by some courts as establishing the UIM policy purchased by the injured person as not only the policy of 'comparison' (for the purpose of gauging whether a UIM claim exists in the first place) but also as the only UIM policy that the injured person has resort to once that threshold test is met. That simply is too broad a reading.

[*French, supra,* 149 *N.J.* at 486, 694 *A.*2d 1008.]

The Court concluded that an insured, as the insured before it, was not limited to a single UIM policy, that is his or her own personal automobile policy. "In short, a policy 'held' by a claimant is not always a policy purchased by a claimant." *Id.* at 487–88, 694 *A.*2d 1008. Others may provide coverage for the claimant. Further, the Court said:

For example, no public policy or statute should prevent a parent from providing UIM coverage for a resident-child greater than the child might have on a personal auto so long as the risk is understood and accepted by the insurance company. After all, the parent is likely to bear the burden of any unreimbursed expenses and to empathize with the uncompensated suffering of a child.

... Like the head of a household, an employer will often wish to insure that the injuries of employees are fully compensated, if only to benefit from the employees' continued well-being. Conversely, an insurance company is not forbidden to limit UIM coverage for family members or employees who have other insurance.

[*French, supra,* 149 *N.J.* at 492–93, 694 *A.*2d 1008.]

Thus, the Court held that:

the statute contemplates that the insured is free to pursue UIM benefits under other policies under which he or she may be insured—whether under his or her personal policy, as the occupant of an employer's vehicle, the permissive occupant of a motor vehicle owned by any other insured person, or as the resident in the household of a relative possessing his or her own UIM insurance. Each of those UIM policies is opened up to the insured once the threshold test is met.

[*Id.* at 494, 694 *A.*2d 1008. (emphasis added) ]

*And see Cook–Sauvageau v. PMA Group,* 295 *N.J.Super.* 620, 625–27, 685 *A.*2d 978 (App.Div.1996), *certif. denied,* 150 *N.J.* 29, 695 *A.*2d 671 (1997). The underlined language in the above quote encompasses precisely the factual situation here.

Nonetheless, because the UIM coverage here arises under the "family member" provisions of the father's policy, defendant contends *Aubrey* 's apparent overruling of *Landi v. Gray,* 228 *N.J.Super.* 619, 550 *A.*2d 768 (App.Div.1988), is dispositive. But if that is what *Aubrey* did, its application would be prospective and, thus, not applicable here. *New Jersey Mfrs. Ins. Co. v. Breen, supra,* 297 *N.J.Super.* at 504, 688 *A.*2d 647.

More importantly, *French,* we think, clarified what the present view is as to *Landi,* and we are convinced it does not preclude plaintiff's resort to her father's policy as an insured family member. In *Landi,* the plaintiff borrowed her brother's automobile and permitted her friend to drive it while she was a passenger. *Landi v. Gray, supra,* 228 *N.J.Super.* at 620, 550 *A.*2d 768. Her friend subsequently drove the car off a road and into a tree, causing plaintiff serious injuries. The friend did not have automobile insurance, except for the liability coverage of $15,000/$30,000 provided under the plaintiff's brother's policy to which she was entitled as a permissive user. At the time of the accident, the plaintiff had her own insurance policy that provided UIM coverage of $15,000. The plaintiff's mother, with whom the plaintiff lived,

had an insurance policy with Keystone Insurance Company (Keystone) that provided UIM coverage of $100,000, and provided coverage for the plaintiff as a family member. Plaintiff brought suit for UIM benefits under the Keystone policy. Keystone denied coverage based upon an exclusionary clause in its policy that stated " 'underinsured motor vehicle' [does not] include[ ] any vehicle ... [o]wned by or furnished or available for the regular use of you or any family member." *Id.* at 621, 550 *A.*2d 768.[3] Keystone argued that this exclusionary provision prohibited coverage for the plaintiff because the accident had occurred in a family member's vehicle. *Ibid.* Nevertheless, we held in *Landi* that such an exclusionary provision was violative of public policy. *Id.* at 622, 550 *A.*2d 768. Consequently, we thus held that the plaintiff there, as an other insured under her mother's policy, could look to the UIM provisions in that policy, even though, as compared to her own, the tortfeasor's policy did not meet the threshold injury. It was in this context that we said "[a] motor vehicle may be underinsured when compared to the underinsured motorist coverage afforded under one policy, yet not be underinsured when compared to the underinsured motorist coverage of another." *Id.* at 624, 550 *A.*2d 768.

In *Aubrey,* the Court said it "disagreed with that statement" and in that context "disapproved of the holding in *Landi.*" *Aubrey, supra,* 140 *N.J.* at 405, 658 *A.*2d 1246. But in setting forth that holding, *Landi* was described as though the plaintiff, no more than the plaintiff in *Aubrey* under the Court's interpretation of the Harleysville policy, was not an "other insured" under her mother's policy. The Court expressly focused upon the policy's exclusionary clause in *Landi. Ibid. And see French,* 149 *N.J.* at 490, 694 *A.*2d 1008 ("[t]he policy, however, [in *Landi* ] contained an exclusion that read in part: 'Neither 'uninsured motor vehicle' nor 'underinsured motor vehicle' includes any vehicle ... [o]wned by

---

[3] It is important to recognize that it is this exclusionary language in Keystone's policy that was at the heart of *Landi,* not, more generally, the family member provision that appears in many automobile policies.

or furnished or available for the regular use of you or any family member.'"). *Landi, supra,* 228 *N.J.Super.* at 621, 550 *A.*2d 768. In effect, the insurance company in *Landi* had said to the insured family member, "don't look to us for UIM benefits if it is another resident-member of your own family that owns the underinsured vehicle. You could have encouraged that family member to buy more insurance or perhaps have bought it yourself." *French, supra,* 149 *N.J.* at 490, 694 *A.*2d 1008. It was our holding in *Landi* that such an exclusionary clause was violative of public policy that the Supreme Court has now disagreed with.

Evidently, the *Aubrey* Court, as did the *French* Court subsequently, 149 *N.J.* at 494, 694 *A.*2d 1008, viewed the plaintiff in *Landi,* simply not an "other insured" under her mother's policy because of the exclusionary provisions. The plain language of the mother's policy in *Landi* precluded UIM coverage available to the plaintiff. She thus "held" no UIM coverage greater than the tortfeasor's and thus could not satisfy the statutory threshold for UIM coverage. *Aubrey, supra,* 140 *N.J.* at 404–05, 658 *A.*2d 1246; *French, supra,* 149 *N.J.* at 494, 694 *A.*2d 1008.

In contrast, in *French,* the plaintiff was an insured under the employer's policy, and the UIM limits were satisfied. Thus, the Court said:

> In this case, the plain language of the policy and the undoubted common intent of the parties to the UIM contract is that the policy covers the bus driver as an employee of the school district. The language of the policy is unambiguous in this regard. The UIM endorsement covers anyone 'occupying a covered auto.' By whom is a policy of the fictitious being of a corporation 'held' if not by corporate employees? Diana French thus 'held' UIM coverage greater than the tortfeasor's liability coverage.
>
> [*French, supra,* 149 *N.J.* at 494, 694 *A.*2d 1008.]

Both *Aubrey* and *French,* then, did not disapprove *Landi* to the extent we held a person may look to other than his or her "own" policy for UIM coverage, assuming that person is an insured under that other policy and the statutory UIM limits are met. What the Court has disagreed with in *Landi* is our interpretation of the mother's policy as including plaintiff as an insured as a family member. This is just as it disagreed with our interpreta-

tion of the Harleysville policy in *Aubrey*. The distinction is not that a plaintiff can not look to more than one policy for UIM coverage, assuming the statutory limits are met. The critical distinction is that he or she may not do so if not an insured, either named, "other," or otherwise, under the terms of the "other" policy. *See French, supra,* 149 *N.J.* at 494–95, 694 *A.2d* 1008.

No issue has been raised here that either the statutory limits were not met or that plaintiff is not an insured under her father's policy.[4] Defendant's disclaimer of coverage related solely to the *dicta* in *Aubrey* as to one's personal insurance. As to that the trial judge correctly concluded that *Aubrey* did not preclude UIM coverage where one is an insured under another's policy and the statutory limits are met.[5]

We thus affirm the order enforcing the arbitrator's award and reverse the award of counsel fees.

---

[4] In its May 22, 1997 reply letter brief, defendant asserted that plaintiff was not "a licensed resident operator" residing in her father's house, referring to the policy's declaration sheets, and was not a "named insured." Defendant, however, has never asserted that plaintiff is not an insured under her father's policy as a "family member." We think it too late for defendant to do so now. *Cf. Barrett v. New Jersey Mfrs. Ins. Co.,* 295 *N.J.Super.* 613, 617–18, 685 *A.2d* 975 (App.Div.), *certif. denied,* 150 *N.J.* 29, 695 *A.2d* 671 (1997).

[5] The discussion of *Landi* in *New Jersey Mfrs. Ins. Co. v. Breen, supra,* 297 *N.J.Super.* at 511–12, 688 *A.2d* 647, and the conclusion that *Aubrey's* overruling of *Landi* effected a substantial change in the law, may be read to suggest that "family member" UIM coverage is what *Aubrey* overruled. It did not. As we have previously said, what *Landi* involved was a discrete exclusionary language that does not, generally, exclude family member coverage and which, as far as we can tell, is not part of the policy at issue here.