847 A.2d 584 (2003)
368 N.J. Super. 515
Philip LOBIANCO, Plaintiff,
v.
HARLEYSVILLE INSURANCE COMPANY, Defendant.
Superior Court of New Jersey, Law Division.
Decided October 10, 2003.
Appeal Dismissed April 7, 2004.
*585 Dennis S. Brotman, Trenton, argued The cause for plaintiff (Brotman, Graziano & Hubert, attorneys; Mr. Brotman, on the brief).
Kelly R. Dalmass argued The cause for defendant (Borrelle, Search, Dalmass, Little & Bigley; attorneys for defendant; Mr. (or Ms.?) Dalmass, on the brief).
OSTRER, J.S.C.
Plaintiff, Philip LoBianco, moves to confirm an arbitration panel's award of uninsured motorist benefits. His insurer, defendant Harleysville Insurance Company (Harleysville), did not strictly comply with the policy's notice requirements for exercising its contractual right to a trial de novo on the issue of damages. Substantial compliance by the insurer does not suffice, nor is the failure of notice excused because *586 the insured allegedly knew that the insurer wanted a trial de novo. Consequently, the arbitrators' award will be confirmed.

Facts and Procedural History
There is no dispute that LoBianco was involved in a motor vehicle accident on June 12, 2000. He alleges in his complaint that an uninsured woman struck him with a car as he walked away from a dispute at a trailer park in East Windsor. Harleysville insured LoBianco at the time.
The Harleysville insurance policy provides that either party may require the other to submit an uninsured motorist claim to arbitration. The policy states, in a rider on uninsured motorist coverage apparently dated March 1999:
ARBITRATION
A. If we and an "insured" do not agree:
1. Whether that "insured" is legally entitled to recover damages; or
2. As to the amount of damages which are recoverable by that "insured";
From the owner or operator of an "uninsured motor vehicle" or an "underinsured motor vehicle", then the matter may be arbitrated. However, disputes concerning coverage under this Part may not be arbitrated.
Either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection may be made by a judge of a court having jurisdiction.
Of importance to this case, the policy also provides that the arbitrators' decision shall be binding, unless, among other things, a demand for a trial is timely made. The policy states that the arbitrators' damage award is binding, unless (a) the amount exceeds statutory minimum liability insurance limits (currently $15,000 per person and $30,000 per accident for bodily injury, and $5000 for property damage), and (b) the insurer or insured "demand[s] the right to a trial" within 60 days of the arbitrators' decision. The policy repeats that if the demand is not made, then the decision is binding. The text of the relevant provision states:
B.... A decision agreed to by two of the arbitrators will be binding as to:
1. Whether the "insured" is legally entitled to recover damages; and
2. The amount of damages. This applies only if the amount does not exceed the minimum limit for liability specified by the financial responsibility law of New Jersey. If that amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.
[Emphasis added.]
After LoBianco's counsel unsuccessfully searched for insurance information for the driver, he wrote to Harleysville on September 25, 2001, to request uninsured motorist coverage. Plaintiff formally demanded uninsured motorist arbitration on April 11, 2002. After discovery, the arbitration was conducted and a decision rendered April 9, 2003, awarding LoBianco $29,500.
On May 9, 2003, counsel for Harleysville wrote to LoBianco's attorney stating:
As you know, this matter proceeded to UM arbitration on April 9, 2003. Harleysville Insurance hereby rejects the award of the arbitration panel. Kindly take any steps necessary to pursue a claim on behalf of your client.

*587 I thank you for your anticipated cooperation and courtesy.
Harleysville's counsel sent identical "rejection letters" dated May 19 and June 3, 2003.
On July 7, 2003, LoBianco and his wife, Norma LoBianco, filed a complaint against Harleysville alleging, among other things, "As neither party has demanded the right to a trial as required by the subject policy, plaintiff is entitled to confirmation of the arbitration award." Complaint, ¶ 13. Pursuant to N.J.S.A. 2A:24-7, LoBianco sought a summary proceeding to confirm the award. Plaintiff seeks damages, as well as costs and attorneys' fees.
Before an answer was filed and served, plaintiff filed the instant motion on September 3, 2003, seeking: (a) confirmation of the arbitrators' award; and (b) prejudgment interest calculated from the time Harleysville was notified of LoBianco's intent to pursue arbitration, that is, April 11, 2002. Although tailored as a "motion to confirm arbitration award," plaintiff presented a statement of material facts. Harleysville responded with admissions, denials, and its own counter-statement. The parties do not dispute the essential fact of the accident, the arbitration, the policy terms or the three "rejection letters". However, Harleysville argues that after plaintiff received the three rejection letters, plaintiff must have had actual knowledge that Harleysville wanted a trial.

Discussion
Harleysville's rejection letters do not strictly comply with the requirement of a demand for a trial. Further, Harleysville's non-compliance is not excused by its alleged substantial compliance or the insured's alleged actual knowledge. To relax the strict requirements of the policy would run afoul of the public policy favoring arbitration of disputes. Also, just as insurance contracts should be strictly construed against the drafter, they should be strictly enforced against the drafter.

1.
First, the rejection letters do not, on their face, strictly comply with the policy language. The language of the policy is unambiguous. Harleysville must demand a trial within sixty days in cases in which damages exceed the statutory minimum. For added emphasis, the policy states, "If this demand is not made, the amount of damages agreed to by the arbitrators will be binding." Nowhere in the rejection letters does Harleysville demand a trial or even mention a trial.
Instead, Harleysville merely rejects the arbitrators' decision, and leaves plaintiff to his own remedies. Rather than invoke the contractual right to a trial de novo, as Harleysville claims, the rejection letters could have expressed a desire for a rehearing by arbitrators. See, e.g., N.J.S.A. 2A:24-8 (providing for vacating an arbitration award and a rehearing by arbitrators if the arbitration was tainted by corruption, fraud, undue means, misconduct, or partiality). Alternatively, Harleysville could have rejected the award because it wanted the court to modify or correct the arbitration award. See, e.g., N.J.S.A. 2A:24-9 (providing for modification or correction of an arbitration award). In sum, much as Harleysville may have intended to demand a trial, it did not do so. Although the policy language was clear, the insurer's letters were not.
Interpreting similar policy language, the Appellate Division has agreed that letters merely rejecting arbitrators' awards do not constitute demands for trial. See Barnett v. Prudential Prop. & Cas. Ins. Co., 304 N.J.Super. 573, 701 A.2d 732 (App.Div. 1997), certif. denied, 154 N.J. 610, 713 A.2d 502 (1998) and Verbiest v. N.J. Full Ins. *588 Underwriting Ass'n, 256 N.J.Super. 85, 606 A.2d 420 (App.Div.1992). In Barnett, the court stated "[w]ithin five days of the arbitrator's award, ... defendant expressed its rejection of that award." Barnett, supra, 304 N.J.Super. at 577, 701 A.2d 732. The court found that the rejection was not a trial demand.
Defendant asserts that its letter to plaintiff disclaiming acceptance of the award as to coverage in light of Aubrey [v. Harleysville Ins. Cos., 140 N.J. 397, 658 A.2d 1246 (1995) ], sent five days after the award, constitutes a demand for jury trial under the language of the policy. It does not. Compare Verbiest v. New Jersey Full Ins. Underwriting Ass'n, 256 N.J.Super. 85, 89, 606 A.2d 420 (App.Div.1992) ("[s]ince the carrier notified the trial court and plaintiffs ... [within the time required under the policy] that it `has rejected the award and is demanding a trial,' the arbitration award was a nullity." (emphasis added)).... [T]here was never a demand for jury trial within the 30 days required under the arbitration provision.

[Id. at 579, 701 A.2d 732 (emphasis added and in original).]
The court's interpretation of the trial demand language in Barnett compels a similar reading in this case, notwithstanding that the court found that the letter did not trigger a trial right for two other reasons. First, the letter disputed coverage, not the quantum of damages, and only the latter was potentially subject to a trial de novo. Second, the Prudential policy subjected to potential trial de novo only awards that exceeded both the maximum and minimum limits of the financial responsibility law, and not merely the "minimum limits" of $15,000/$30,000/$5000 as in the Harleysville policy.
The Verbiest court also applied policy language like Harleysville's. The insurer first sent a letterlike Harleysville's letter heresimply rejecting the arbitrators' award, stating, "the arbitrator's awards are rejected." Verbiest, supra, 256 N.J.Super. at 87, 606 A.2d 420. Nine days later, still within the time limit, the insurer sent another letter that not only rejected the award but expressly demanded a trial. The letter stated, "[T]he insurance carrier has rejected the award and is demanding a trial." Ibid. The court found that the later letter satisfied the policy. Id. at 89, 606 A.2d 420. Implicit in the court's reasoningalbeit not essential to its holdingwas that the first letter, which merely rejected the arbitrators' award, did not suffice.

2.
Notwithstanding the technical deficiency of Harleysville's rejection letters, Harleysville essentially argues that its notice should be deemed sufficient because plaintiff allegedly inferred Harleysville's desire for a trial. Harleysville asserts that LoBianco must have read the rejection letters to constitute an objection to the arbitrators' awards and an invitation to the parties to seek redress in a court. There is no proof of that at this early stage of the case. LoBianco's filing of the complaint does not establish actual knowledge. Regardless, it is immaterial whether LoBianco or his counsel suspected that Harleysville wanted a trial de novo. LoBianco is entitled to enforce the policy as written.
As the drafter of the contract, Harleysville is in no position to complain if plaintiff insists upon strict adherence to the policy's trial-demand provision. The policy is a contract of adhesion between parties unequally situated. See, e.g., Allen v. Metro. Life Ins. Co., 44 N.J. 294, 305, 208 A.2d 638 (1965) (stating that insurance policies are contracts of adhesion). Our Supreme Court has "consistently construed *589 policy terms strictly against the insurer...." Ibid. See also Cynthia M. Craig & Daniel J. Pomeroy, N.J. Auto Insurance Law § 2:3-1 at 28-31 (2003) (collecting cases supporting the principle that insurance contracts are strictly construed against the insurer).
However, this is not a case where an ambiguous adhesion contract must be strictly construed against the drafter. There is no ambiguity in the policy language; it states clearly that either party must demand a trial in sixty days in order to get one. Rather, this is a case where an unambiguous adhesion contract must be strictly enforced against the drafter. As one commentator has observed, the drafter of an adhesion contract has little cause to complain about the harshness of its own contract:
Presumably, all form terms are binding in favor of the adhering party when they happen to be more favorable than the background law, although the cases and literature contain very little discussion of the issue.... Perhaps the simplest answer is that if the drafter was content with a term, and offered it take-it-or-leave-it, the court should not bother to inquire further.
[Todd D. Rakoff, Contracts of Adhesion: An Essay in Reconstruction, 96 Harv. L.Rev. 1173, 1253 n. 250 (1983).]
Concededly, the trial-demand provision by itself is neutral in its effect, and conditions the right of both insurer and insured to seek a trial de novo. See Derfuss v. N.J. Mfs. Ins. Co., 285 N.J.Super. 125, 130-31, 666 A.2d 599 (App.Div.1995) (finding neutral an uninsured motorist provision defining scope of issues subject to trial de novo). However, the added condition that only awards over the statutory limits are subject to trial de novo arguably favors the insurer. Compare Cohen v. Allstate Ins. Co., 231 N.J.Super. 97, 102, 555 A.2d 21 (App.Div.1989) (declining on the record before it to find that the "statutory limits" condition favored insurers and therefore declining to find it unconscionable), with cases cited in 15 Couch on Insurance § 214.16 (2003) ("[T]he evenhandedness is more apparent than real. The insured would have no motivation to appeal a high award and such provisions do not permit the insured to seek trial de novo for awards below the financial responsibility limits.")
Yet, at least in this case, the right to a trial de novo favors the insurer, inasmuch as the insured is happy with the arbitrators' award and the insurer is not. Thus, the insured should be able to strictly enforce the policy terms. As the Supreme Court observed, "When the terms of an insurance contract are clear, it is the function of a court to enforce it as written and not to make a better contract for either of the parties." Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 43, 161 A.2d 717 (1960) (citations omitted). Consistent with, but not pursuant to, the rule of liberal construction favoring insureds, a court should strictly enforce an unambiguous insurance contract where to do otherwise would make a better contract for the insurer.
Moreover, a restrictive reading of the trial-demand provision promotes arbitration of disputes, which our courts favor, particularly in cases involving auto insurance. "New Jersey courts also have favored arbitration as a means of resolving disputes." Martindale v. Sandvik, Inc., 173 N.J. 76, 84, 800 A.2d 872 (2002) (citations omitted). "[A]rbitration agreements... `should be read liberally to find arbitrability if reasonably possible.'" Hudik-Ross, Inc. v. 1530 Palisade Ave. Corp., 131 N.J.Super. 159, 165, 329 A.2d 70 (App.Div. 1974) (citation omitted). See Coalition for Quality Health Care v. N.J. Dep't of Banking & Ins., 348 N.J.Super. 272, 311, *590 791 A.2d 1085 (App.Div.) (affirming insurer's right to require arbitration of PIP claims in all its policies, which was consistent with general public policy favoring arbitration), certif. denied, 174 N.J. 194, 803 A.2d 1165 (2002). The court in Hudik-Ross found that a pro-arbitration interpretation of a contract was "strengthened by the strong public policy in favor of arbitration." 131 N.J.Super. at 166, 329 A.2d 70. So too here, strict enforcement of the trial-demand provision is supported by the State's pro-arbitration policy. Strict enforcement of the trial-demand requirement "will foster prompt resolution of disputes without resort to protracted litigation, ease court congestion and reduce costs to the automobile insurance system." Coalition for Quality Health Care v. N.J. Dep't. of Banking & Ins., supra, 348 N.J.Super. at 311, 791 A.2d 1085.
Even in contractual relationships that are not as one-sided as the relationship between an auto insurer and insured, a contracting party is entitled to demand strict enforcement of a condition to a contract right. In an oft-quoted statement, the Appellate Division has held:
[W]here the terms of a contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written.... The court has no right "to rewrite the contract merely because one might conclude that it might well have been functionally desirable to draft it differently." ... Nor may the courts remake a better contract for the parties than they themselves have seen fit to enter into, or to alter it for the benefit of one party and to the detriment of the other.
[Karl's Sales & Serv., Inc. v. Gimbel Bros., Inc., 249 N.J.Super. 487, 493, 592 A.2d 647 (App.Div.1991) ].
This is not a case where a contractual condition must be excused to avoid a disproportionate forfeiture. Compare Restatement (Second) of Contracts § 229 (1981) ("To the extent that the non-occurrence of a condition would cause disproportionate forfeiture, a court may excuse the non-occurrence of that condition unless the occurrence was a material part of the agreed exchange."). Consistent with the principle of Restatement § 229, courts have permitted substantial performance of insurance notice provisions by insureds not insurerswhere there is no prejudice to the insurerin order to avoid a forfeiture of coverage. See, e.g., Haynes v. Metro. Life Ins. Co., 166 N.J.Super. 308, 313, 399 A.2d 1010 (App.Div.1979) (substantial compliance with contract provision governing beneficiary change). But in this case, Harleysville will suffer no forfeiture if the arbitrators' award is confirmed; it received its premium and will pay out bargained for benefits, pursuant to the policy.
Also, decisions allowing substantial compliance with constructive or implied conditions do not control here, where the demand is required by an express provision of a private contractual agreement.
Although the court may regret the harshness of such a condition, as it may regret the harshness of a promise, it must, nevertheless, generally enforce the will of the parties unless to do so will violate public policy. Where, however, the law itself has imposed the condition, in absence of or irrespective of the manifested intention of the parties, it can deal with its creation as it pleases, shaping the boundaries of the constructive condition in such a way as to do justice and avoid hardship. Express contractual conditions must be literally met or performed, but constructive conditions, which arise and are implied by the courts from the language of the promise contained in the parties contract, are *591 subject to the precept that substantial compliance with the condition (and ultimately, substantial performance of the promise) is sufficient.
[13 Williston on Contracts § 38:12 (Lord ed.2003)].
Courts that have adopted rules are free to relax them, or not. Thus, the California Court of Appeal applied a "substantial compliance" test and found that a letter purporting to reject an arbitrator's awardmuch like Harleysville's letter heremet a court rule's requirement for demanding a trial de novo. Hanf v. Sunny view Dev., Inc., 128 Cal.App.3d 909, 180 Cal.Rptr. 718 (1982). See also Corcoran v. St. Peter's Med. Ctr., 339 N.J.Super. 337, 343, 771 A.2d 707 (App.Div.2001) (applying "substantial compliance" test to court-rule-imposed requirement of timely service on adversary of trial de novo demand). However, the court rules do not govern contractual arbitration provisions governing first-party claims for PIP or UM benefits. See Churm v. Prudential Prop. & Cas. Ins. Co., 276 N.J.Super. 631, 635, 648 A.2d 741 (App.Div.1994) (explaining that R. 4:21A concerns tort claims, and not first party actions against insurance companies).
Moreover, our Supreme Court has required more than just "substantial compliance" before relaxing a statutory requirement governing a trial de novo demand. In Hartsfield v. Fantini, 149 N.J. 611, 618, 695 A.2d 259 (1997), the Court held that substantial compliance with the statutory filing deadline in N.J.S.A. 39:6A-31 was insufficient absent "extraordinary circumstances." See also Corcoran v. St. Peter's Med. Ctr., supra, 339 N.J.Super. at 343, 771 A.2d 707 (stating that the "substantial compliance" rule more readily applied to rule-imposed requirements than to statutory requirements). If "extraordinary circumstances" as well as substantial compliance must be shown before relaxing a statutory demand requirement, then at least that must be shown before relaxing, for the insurer's benefit, a contractual trial-demand requirement for a trial de novo. No showing of extraordinary circumstances has been made.
Consistent with these principles, the New York Court of Appeals found that a written notice requirement in a lease was not satisfied by substantial performance consisting of oral notice within the deadline. Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co., 86 N.Y.2d 685, 636 N.Y.S.2d 734, 660 N.E.2d 415 (1995). Oral notice certainly would convey actual knowledge. But the contracting party was entitled to insist upon strict enforcement. So, too, may LoBianco.
In sum, even if LoBianco somehow surmised that Harleysville wanted a trial de novoas Harleysville allegesthat should be of no moment. LoBianco is entitled by the contract to insist on a formal trial demand, which Harleysville did not make.

3.
Lastly, plaintiff seeks interest on the arbitrators' award from the date the arbitration was requested, that is, April 11, 2002. Barring equitable circumstances, however, interest shall be awarded from the date the arbitration award was entered, which in this case is about a year later, April 9, 2003. See Martellio v. Burbank, 341 N.J.Super. 520, 526, 775 A.2d 620 (App.Div.2001); Rivers v. Gen. Accident Group, 192 N.J.Super. 355, 359, 470 A.2d 19 (App.Div.1983). More importantly, the issue of pre-judgment interest is arbitrable under a UM endorsement and "must be decided by the arbitrators in the first instance. If it is not decided by the arbitrators, a court is powerless to award it thereafter." Martellio v. Burbank, supra, 341 N.J.Super. at 526, 775 A.2d 620.

*592 Conclusion

In sum, Harleysville drafted the insurance policy that made the trial-demand a condition precedent to a trial de novo on uninsured motorist damage. Harleysville failed to strictly comply with its own requirement. Substantial compliance, or alleged actual knowledge of Harleysville's intent is not enough to satisfy the contract. Therefore, the arbitrators' award shall be confirmed. An order consistent with this opinion is issued herewith.