61 A.3d 170

MARLENY VEGA, PLAINTIFF–RESPONDENT, v. 21ST CENTURY INSURANCE COMPANY, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted February 12, 2013—Decided March 13, 2013.

Before Judges FISHER, WAUGH and ST. JOHN.

*Law Offices of Edward Hoagland, Jr.*, attorneys for appellant (*Joseph M. DiCicco*, on the brief).

*Michael V. Coppola*, attorney for respondent.

The opinion of the court was delivered by

FISHER, P.J.A.D.

In this appeal, we revisit whether an insurer's timely letter rejecting an arbitration award is sufficient to trigger its right to nullify an uninsured motorist arbitration award. In reversing, we reject the argument that a party is required to exactly assert its "demand for a trial" to nullify an award and conclude that, in these circumstances, the insurer's "rejection of the arbitration award" was sufficient.

The record reveals that plaintiff Marleny Vega claimed to have been injured when her motor vehicle, which was insured by defendant 21st Century Insurance Company, was struck by a hit-and-run driver. She made a claim under the policy's uninsured-motorist (UM) endorsement, and the parties proceeded to arbitration, which resulted, on June 16, 2011, in an award of $87,500.

Because the award exceeded the minimum-liability coverage required by law, "either party" had the right to "demand the right to a trial on all issues," provided that the demand was made in writing within thirty days of the arbitrators' decision. When this policy provision is properly triggered, the award is nullified and the claimant must resort to filing a complaint; without such a demand, the award becomes "binding."

On July 8, 2011, within thirty days of the award, 21st Century's attorney wrote to Vega's attorney, stating:

> Pursuant to the provisions of the 21st Century Insurance Policy ... the UM Arbitration Award of June 16, 2011 is hereby rejected. Kindly be guided accordingly and contact the undersigned to discuss possible settlement of this matter.

A few months later, Vega filed this action, not for damages, but for an order enforcing the arbitration award, claiming the July 8 letter did not "demand a trial" and, thus, by operation of the insurance policy's terms, the award became binding.

The matter was summarily decided on the return date of an order to show cause. The judge found the language of the July 8 letter did not satisfy the requirements of the policy and entered judgment in Vega's favor. 21st Century appeals.

 Because there were no contested facts, the judge correctly determined that the matter could be decided summarily. Our review of the judge's legal decision, of course, is plenary. *Manalapan Realty, L.P. v. Twp. Comm. of Manalapan*, 140 *N.J.* 366, 378, 658 *A.*2d 1230 (1995); *Polarome Int'l, Inc. v. Greenwich Ins. Co.*, 404 *N.J.Super.* 241, 260, 961 *A.*2d 29 (App.Div.2008), *certif. denied*, 199 *N.J.* 133, 970 *A.*2d 1050 (2009).

 As suggested in this opinion's opening sentence, this is not the first time the sufficiency of a party's post-arbitration communication has been considered by our courts. We discern from the trial judge's reliance on the trial court decision in *LoBianco v. Harleysville Insurance Co.*, 368 *N.J.Super.* 515, 847 *A.*2d 584 (Law Div.2003), which we now overrule, that he believed the party seeking to nullify the award was required to invoke certain magic words, namely: "We demand a trial." Although there may be

times in which a party's written response to an arbitration award may require such a statement, *see Barnett v. Prudential Prop. & Cas. Ins. Co.,* 304 *N.J.Super.* 573, 701 *A.*2d 732 (App.Div.1997), *certif. denied,* 154 *N.J.* 610, 713 *A.*2d 502 (1998), we cannot agree there is only one way to trigger the policy language and nullify an arbitration award. In *Morag v. Continental Insurance Co. of New Jersey,* 375 *N.J.Super.* 56, 62, 866 *A.*2d 996 (App.Div.2005), we recognized that a party who fails to expressly demand a trial runs the risk that the demand will be found ambiguous, but we rejected in *Morag*—and reject here—the notion that a party must strictly invoke the policy's exact words to nullify the award.

We commence our examination of prior related decisions in this arena with *Verbiest v. New Jersey Full Insurance Underwriting Ass'n,* 256 *N.J.Super.* 85, 606 *A.*2d 420 (App.Div.1992). *Verbiest* is not enlightening, however, because we were not then asked to determine the sufficiency of the aggrieved party's words. Instead, we considered whether it was the insurer's burden to institute the litigation and held it was not. *Id.* at 89, 606 *A.*2d 420. Notwithstanding *Verbiest's* inappositeness, we mentioned that the policy in question required that "the carrier ... reject the arbitrators' decision *and demand trial* [.]" *Ibid.* (emphasis added).[1] We do not view this incidental comment as tantamount to a holding that only the utterance of the quoted and emphasized language will nullify an arbitration award.

*Barnett* is similarly inapplicable. There, the insurer had two potential reasons for seeking a trial, a coverage dispute and the award's excessiveness. In what we assume was a less–than-precise post-arbitration letter—which we did not quote in the opinion—we noted that the insurer "expressed its rejection of

---

[1] In *Verbiest,* the insurer's letter notified the claimants that "the arbitrator's awards are rejected" and invited them to discuss "possible settlement," while also informing the claimants of the insurer's proper name if they "decide[d] to institute litigation." The insurer's letter to the trial court advised that "the insurance carrier has rejected the award and is demanding a trial." *Id.* at 87, 606 *A.*2d 420.

th[e] award ... on the sole basis of [the coverage dispute]," *Barnett, supra,* 304 *N.J.Super.* at 577, 701 *A.*2d 732, and "was not focused upon the amount of damages ascertained by the arbitration," *id.* at 579, 701 *A.*2d 732. This *circumstance is not presented* here because there is only one reason why 21st Century would reject the arbitration award—its alleged excessiveness. The only light that *Barnett* may shed on the issue is its addition of emphasis to the following statement from *Verbiest, supra,* 256 *N.J.Super.* at 89, 606 *A.*2d 420: "[s]ince the carrier [timely] notified the trial court and plaintiffs ... that it 'has *rejected the award* and is *demanding a trial,*' the arbitration award was a nullity." *Barnett, supra,* 304 *N.J.Super.* at 579, 701 *A.*2d 732 (alteration in the original). It has been argued, as also held in *LoBianco, supra,* 368 *N.J.Super.* at 520, 847 *A.*2d 584, that this statement suggests the sole method for nullifying an arbitration award. We reject the argument that our manner of citing *Verbiest* in *Barnett* is the equivalent of such a holding. The issue of what an insurer must utter to nullify an award was simply not before us in *Barnett,* and we find unavailing the attempt to wring some deeper meaning from the court's opinion.

Unlike these earlier cases, in *Morag* we actually considered whether the wording of an insurer's post-arbitration letter was sufficient to nullify an award. There, the insurer timely wrote to "reject[ ] the underinsured motorist arbitration award," noting that "[t]his method of rejecting the arbitration award is specifically provided for in *Verbiest....*" *Morag, supra,* 375 *N.J.Super.* at 58, 866 *A.*2d 996. The letter also asked the claimant to "advise when you file the appropriate [c]omplaint" and contained counsel's representation to "accept service on behalf of [the insurer]." *Ibid.* The insurer, however, as here, never wrote: "we demand a trial." In considering whether this letter was sufficient, we determined that we were obligated to "enforce[e] what we perceive to be the reasonable expectations of the insured," *id.* at 62, 866 *A.*2d 996, and held:

> Although insurance counsel's letter did not use the expressed words "demanding a trial," it sufficiently apprised plaintiff's counsel that the insurer was (1) requiring

> the insured to file the necessary complaint and (2) waiving formal service of process. The words "when you file the appropriate complaint" used between lawyers following specific reference to *Verbiest*, together with acceptance of service, was equivalent to demanding that plaintiff's counsel proceed to litigate the issue of damages on behalf of his client. Simply stated, *the fair implication of the correspondence between the lawyers was that the carrier was demanding a damages trial.* To hold otherwise would be placing form over substance.
> [*Ibid.* (emphasis added)]

We continue to adhere to this approach of determining "the fair implication" of the wording of a post-arbitration letter in a manner that does not exalt form over substance. As a result, we reject the strict-compliance standard adopted by the trial judge, in reliance on *LoBianco*, in entering judgment in favor of plaintiff.[2]

■ 21st Century's letter "rejecting the arbitration award" and directing plaintiff to be "guided accordingly" is only ambiguous if there is some plausible interpretation as to what 21st Century was conveying other than a demand for a trial; we discern no plausible alternative interpretation. In this context, the rejection of the award can only be interpreted as demanding a trial, as the additional invitation to discuss settlement further amplifies; that is, there was nothing to discuss if the letter did not intend to convey the insurer's demand for a trial. Vega could not have reasonably understood the letter to mean anything else.

Notwithstanding the absence of an alternative meaning to 21st Century's rejection of the award and invitation to discuss settlement, the trial judge held, in following *LoBianco*, that 21st Century's failure to talismanically express a demand for a trial

---

[2] In *LoBianco*, *supra*, 368 *N.J.Super.* at 518, 847 *A*.2d 584, the trial court found an insurer's letter "reject[ing] the award of the arbitration panel" and advising the claimant to "take any steps necessary to pursue a claim on behalf of your client," to be insufficient to nullify the arbitration award. The court also found irrelevant the fact that the claimant may have understood the insurer's letter as demanding a trial: "In sum, even if LoBianco somehow surmised that Harleysville wanted a trial de novo—as Harleysville alleges—that should be of no moment. LoBianco is entitled by the contract to insist on a formal trial demand, which Harleysville did not make." *Id.* at 526, 847 *A*.2d 584. This strict compliance standard is inconsistent with *Morag* and today's decision and, for that reason, *LoBianco* must be overruled.

was fatal and, therefore, the award remained binding. We reject such formalism.

To be sure, the final sentences of our *Morag* opinion cautioned that parties would be better served by writing with greater clarity than the insurer in that case:

> The proper and most direct manner to demand a trial is to do so expressly. To do otherwise invites ambiguity, which could, depending on the factual circumstances, lead to a different result.
>
> [*Morag, supra*, 375 *N.J.Super.* at 62, 866 *A.*2d 996]

These comments did not, however, create a standard for all future cases. We simply advised—and advise again—how a litigant may best avoid similar litigation in the future. The failure to heed that advice may lead to similar expensive litigation, but neither *Morag* nor today's opinion should be viewed as insisting upon a literal "demand for a trial" to trigger the policy language in question.

Reversed.